(18 App. Div. 481.)

## BLASS v. AGRICULTURAL INS. CO. OF WATERTOWN.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

1. INSURANCE—APPLICATION—PREPARATION BY AGENT.
   Statements made in an application for a policy of insurance, made out by the insurance agent after conference with the applicant, but without his knowledge or authority, and not signed by him, are not binding upon the insured.

2. SAME—ESTOPPEL—VACANT PREMISES.
   An insurance agent who has power, by indorsing a written consent upon the policy, to insure a house which is unoccupied, may, by issuing a policy on a house which he knows to be unoccupied, estop the insurance company to interpose the fact that the house is unoccupied, as a defense to the policy.

Action by George Blass against the Agricultural Insurance Company of Watertown, N. Y. A verdict was directed for plaintiff, and defendant's exceptions were ordered to be heard in the appellate division in the first instance. Exceptions overruled, and judgment ordered for plaintiff.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

James W. Hart, for plaintiff.

A. H. Sawyer, for defendant.

FOLLETT, J. The plaintiff asked that a verdict be directed in his favor, and the defendant that a verdict be directed in its favor, and neither party requested that any issue of fact be submitted to the jury. The court denied the defendant's motion, and granted the plaintiff's, and the defendant excepted. This action was begun August 10, 1895, to recover on a New York standard fire insurance policy, issued April 9, 1894, by which defendant, in consideration of $9, insured, for three years from the date of the policy, the plaintiff's dwelling house for $800, the household furniture therein for $75, and the provisions and wearing apparel therein for $25,—total, $900. February 20, 1895, the dwelling and its contents were destroyed by fire. Four defenses are interposed to this action: First. That the plaintiff failed to comply with the following provision of the policy: "If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company." Second. That the plaintiff falsely represented, before the policy was issued, that the dwelling was occupied, and that the written application contained this false representation: "Q. For what is house occupied? A. Farming. Q. By whom? A. Applicant." Third. That the plaintiff made the following false representation in his application: "Q. How much is real estate incumbered? A. $200; will soon be taken off." That the property was incumbered for about $350, and that the following provision in the policy was violated: "If the property, real or personal, covered by this policy, be or become incumbered by a mortgage, trust deed, judgment, or otherwise, this entire policy shall be void, unless otherwise provided by agreement indorsed hereon or added hereto." Fourth. That the dwelling was vacant when the fire occurred, and had been for more than ten days previously

thereto, in violation of the following provision of the policy: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied, and so remain for ten days."

There is nothing in the record which sustains the first defense. The policy was issued by Mills H. Douglas, defendant's agent, who resided at Red Creek, N. Y. The day after the fire, two of the plaintiff's neighbors, by his direction, called on the agent, and told him that the house was burned the night before, and he then agreed to write and inform the defendant of the fact. This was testified to by the two neighbors, and by the defendant's agent, who also testified that on the next day he wrote a letter to the defendant, and informed it of the fire. The plaintiff testified that, within three weeks after the fire, he wrote defendant that his property had been burned, and requested an adjustment and payment of his loss. April 11, 1895, within 60 days after the fire, the plaintiff verified and mailed to defendant, in a registered letter, the proofs of loss, which were retained without objection. After this, Dewey, the defendant's adjuster, and Douglas, its agent, visited the scene of the fire, and talked with the plaintiff about it, and at no time was it pretended by the defendant or its agents that it had not been duly notified of the fire. The defendant refused to pay the loss solely because the house was vacant when burned. The provision in the policy in respect to the notice of the fire is to enable the insurer to examine into the cause of the fire, and the extent of the loss, while the evidence is fresh and easily ascertained. It is not asserted that the fire was a fraudulent one, and the amount of the loss is not, and never has been, questioned. That the defendant had due notice of the fire was abundantly proved by uncontradicted evidence other than by the testimony of the plaintiff and of the defendant's agent that they wrote the defendant in respect to the matter. Permitting the plaintiff and the defendant's agent to testify that they wrote such letters, which presumptively were received, and which the defendant did not produce, did not prejudice the defense.

The third defense will be next considered. The application was not signed by the plaintiff, nor by any one. The plaintiff never saw it. It was written by the defendant's agent after he returned to his residence, and he does not assert that it was written in the presence of the plaintiff, or with his knowledge. It was the unauthorized act of the defendant's agent, and his statement in the application that the real estate was incumbered for $200, which would soon be taken off, is not binding on the plaintiff. The property insured was devised to the plaintiff by his father, subject to a legacy in favor of the plaintiff's sister, on which payments had been made from time to time. The plaintiff testified that he informed Douglas of the nature of the lien, and told him that $250 or $350 were unpaid. Douglas testified that he was informed of the nature of the lien, but the plaintiff stated it had been reduced to $200. This question of fact was submitted to the court, and found in favor of the plaintiff. The third defense is not sustained.

The second defense is based on the theory that the policy never took effect, because it is alleged that the plaintiff stated in the written application, and to the defendant's agent, in the negotiation preceding the issuing of the policy, that the dwelling was occupied. As before stated, the application was not signed by the plaintiff, and was not written in his presence or by his direction, but was written by the defendant's agent on his own motion, and was the unauthorized act of the agent. The plaintiff and the defendant's agent so testified, and the plaintiff is not bound by the statement contained in the application. The plaintiff and the defendant's agent both testified that, the day before the policy was issued, the agent went through the dwelling; that it was then not occupied by a family, a few articles of furniture only being in one of the rooms. The plaintiff testified that he told the agent the house was then unoccupied, but would be in a few days; that he and his family lived at the village of Spring Lake during the winter, and occupied the farm house during the season for working the farm. He also testified that he had a policy on the property issued by the defendant, which expired just before the one in suit was issued, on which the premium for three years was 75 cents on $100, and that the agent increased the rate to $1 on $100 for three years, because the dwelling was to be unoccupied during a portion of the time covered by the policy. The defendant's agent testified that the plaintiff told him the house was occupied, and did not tell him that it was to be vacant during any portion of the time for which it was insured, and that the rate for farm buildings was then $1 on $100 for three years by reason of an increase of rates on such property. This issue of fact was submitted to the court, and found for the plaintiff; so the plaintiff made no false or incorrect statement to defendant or to its agent.

The fourth defense is based on the ground that the dwelling was unoccupied when the policy was issued, and remained so for more than 10 days, and was unoccupied at the time of the fire, and had been for more than three months previously thereto. It is conceded that the house was not occupied as a dwelling when the policy was issued, and that it remained unoccupied, except during portions of the farming season, when it was partly occupied as a temporary abiding place for the plaintiff and some members of his family while engaged in working the farm. About the 1st of November, 1894, when the work for the year on the farm had been completed, until February 20, 1895 (the date of the fire), the house was not occupied by a family. The plaintiff left some articles of furniture in the house, and, when he had occasion to go to the farm, he would enter the house, and make some use of it, but no person lived in it after the 1st of November, 1894.

In addition to the provision contained in the policy in respect to unoccupancy, and hereinbefore quoted, the policy contains the following provision:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other repre-

sentative of this company shall have power to waive any provision or condition of this policy except such as, by the terms of this policy, may be the subject of agreement indorsed hereon or added hereto; and, as to such provisions and conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached."

The first question presented is whether, under the terms of the policy, defendant's agent had power to bind it by a policy on which an agreement that the dwelling might be vacant for more than 10 days was not indorsed. This question seems to have been set at rest by Manchester v. Assurance Co., 151 N. Y. 88, 45 N. E. 381, reversing 80 Hun, 251, 30 N. Y. Supp. 49. That was an action brought on a New York standard fire insurance policy, which contained the same limitations upon the power of the agent as are contained in this policy. The agent of the defendant in the case cited had authority to indorse a consent to a change of title. The policy was issued to Ebenezer S. Strait, who then owned the property insured, who, August 1, 1890, conveyed it to Emily J. Manchester, who took immediate possession, and the policy of insurance was assigned to her. She notified the agent that she had purchased the property, and requested him to go to the bank where the policy was kept, and indorse a consent of the insurer thereon to the transfer of title, which the agent agreed to do, but failed to perform. Afterwards the property was destroyed by fire. It was held at general term that the plaintiff could not recover, because a written consent to the transfer had not been indorsed on the policy, and that the oral promise of the agent did not bind the insurer; but on appeal the judgment was reversed, the court of appeals holding that the conduct of the agent amounted to an equitable estoppel, and that the defendant was estopped from claiming a forfeiture of the policy because of the absence of a written consent indorsed on the policy. It is difficult to see any difference in principle between the case cited and the one at bar. In the present case the agent had power, by indorsing a written consent upon the policy, to insure a dwelling which should be and remain unoccupied for more than 10 days. If the agent in the case cited had power by his conduct to estop the defendant without a written consent, the agent in the present case must be deemed to have had power to bind the defendant by a policy on a building which he knew was to be unoccupied beyond the time limited in the policy, and so estop the defendant from interposing its unoccupancy as a defense. The case last cited seems to conflict with Messelback v. Norman, 122 N. Y. 578, 26 N. E. 34, and O'Brien v. Insurance Co., 134 N. Y. 28, 31 N. E. 265, but it is the latest expression of the court of appeals, and must be followed.

In Bennett v. Insurance Co., 106 N. Y. 243, 12 N. E. 609, affirming 15 Abb. N. C. 234, the policy provided:

"If the dwelling house or houses hereby insured shall cease to be occupied by the owner or occupant in the usual and ordinary manner in which dwelling houses are occupied as such, or be so unoccupied at the time of effecting insurance, and not so stated in the application, then, and in every such case, or in

either of said events, this policy shall be null and void, until the written con-
sent of the company at the home office is obtained."

The dwelling was unoccupied when the policy was issued, was afterwards occupied for some time, but was unoccupied at the time of the fire. It was found as a fact that the agent who issued the policy knew that the building was unoccupied when the policy was issued, though that fact was not stated in the application, nor was the written consent of the insurer obtained. It was held that the dwelling being unoccupied at the time when the policy was issued, to the knowledge of the defendant's agent, the policy took effect, and that it was not invalidated by the fact that it was subsequently occupied for a time, and then vacated, and remained continuously unoccupied for more than six months preceding the fire. This case is an authority for the position that an agent may bind an insurer by issuing a policy upon a building which he knows to be unoccupied, without stating in the application or indorsing on the policy the fact that the building is unoccupied.

The learned counsel for the defendant refers to several cases in other states arising under policies like the New York standard policy, which he insists are authorities for the contention that this policy is not binding on the defendant by reason of the unoccupancy of the dwelling. Ranspach v. Insurance Co. (Mich.) 67 N. W. 967; England v. Insurance Co., 81 Wis. 583, 51 N. W. 954; Insurance Co. v. Tilley, 88 Va. 1024, 14 S. E. 851; and Insurance Co, v. Chadwick (Tex. Civ. App.) 35 S. W. 26,—were actions on policies similar to the New York standard policy. In the first case the house was occupied when insured, and afterwards was unoccupied for three months previously to the fire, without the knowledge or consent of the insurer or of its agent, and it was held that the plaintiff could not recover. In the second case the barn was unoccupied when the policy was issued (June 14, 1890), and continued to be until August 22, 1890, when burned. It was not shown that the defendant or its agent knew the barn was unoccupied when the policy was issued, and it was held that the insurer was not liable. In the third case cited, the policy contained a clause in respect to occupancy like the one in the case at bar, except the time was 20 days instead of 10 days. The building was unoccupied when the policy was issued. Subsequently it was occupied, but at the time of the fire it was unoccupied, and had been for more than 20 days. It was not shown that the insurer or its agent knew that it was or was to become unoccupied, and it was held that the plaintiff could not recover. In the fourth case cited, the building was unoccupied April 7, 1893, when the policy was issued, which the agent knew. From April 27, 1893, to October 1, 1893, the building was occupied, and from the latter date until December 15, 1893, when burned, it was unoccupied. The occupation clause in that policy is like the one in the case at bar, and it was held that the plaintiff could not recover. In that case it was not shown that the insurer or its agent knew that the building was, as in the case at bar, to be occupied and unoccupied from time to time, as suited the convenience of the insured. None of the four cases referred to support the contention of the defendant.

Under the cases in this state, it must be held that the plaintiff is entitled to recover, and the defendant's exceptions should be overruled, and a judgment ordered for the plaintiff on the verdict, with costs.

ADAMS, GREEN, and WARD, JJ., concur.

HARDIN, P. J.   Upon the authority of the cases cited in the foregoing opinion, as well as upon the doctrine enunciated in Smaldone v. Insurance Co., 15 App. Div. 232, 44 N. Y. Supp. 201, I yield my assent, and concur in the opinion.