JAMES L. MAXWELL, et als.,

*vs.*

YORK MUTUAL FIRE INSURANCE COMPANY.

Androscoggin.    Opinion December 3, 1915.

*Agents.    Applications filled out by Agents.    Fire Insurance.    Mortgage.*
*Occupant.    Public Laws, 1861, Chapter 34.    Public*
*Laws, 1862, Chapter 115, Section 2.*
*Vacant Buildings.    Waiver.*

1.  Chapter 49, Section 93, R. S., providing for service of notice or process upon an agent of such Company, provides further that such agents and the agents of all domestic Companies shall be regarded as in the place of the Company in all respects regarding any insurance effected by them.
2.  The Company is bound by their knowledge of the risk and of all matters connected therewith.
3.  Omissions and misdescriptions known to the agent shall be regarded as known to the Company and waived by it as if noted in the policy.
4.  To avoid liability on a fire insurance policy on the ground of untrue statements in the proof of loss, it must be shown that the statements were knowingly and intentionally untrue, and the burden of showing it is on the Company.

On exceptions by defendant.    Exceptions overruled.

An action of assumpsit on a policy of fire insurance issued by defendant, dated October 24, 1912, on certain buildings located in the town of Webster.    Plea, the general issue with brief statement.

At the conclusion of the evidence on both sides, the presiding Justice directed the jury to return a verdict for plaintiff for $640.06. To this ruling, the defendant excepted and his exceptions were allowed.

The case is stated in the opinion.

*Harry Manser,* for plaintiffs.

*Tascus Atwood,* for defendant.

SITTING:  SPEAR, KING, BIRD, HALEY, HANSON, JJ.

HANSON, J.  This is an action on a fire insurance policy and is before the court on exceptions to the order of the presiding Justice directing a verdict for the plaintiff.  The facts are not in dispute.  The property belonged to the heirs of Llewellyn Maxwell.  It had been insured by the London & Lancashire Ins. Co. for $1500, through the agency of J. P. Hutchinson & Co., who were also the agents of the defendant company.

Prior to October 15, 1912, as appears by letter of the agents of that date, the agents were informed that the buildings were vacant and would remain so all winter, and they, being unable to secure a vacancy permit from the London & Lancashire Co., made application to two mutual companies for $750 insurance in each in behalf of the plaintiffs.  As shown by this letter, the agents filled out the application in this case and sent it to the administratrix to sign.  In reply to the question as to occupancy, the answer written by the agents is "vacant at present."  Further, in the answers in that part of the application directed to be made by the agents, appears the information that the London & Lancashire Company had cancelled the risk on account of vacancy.

The policy in this case was issued October 30, 1912.  On November 5, 1912, the agents wrote to the defendants asking them if they would increase the amount of insurance, as the Vermont Mutual had declined to go on the risk on account of its being vacant, to which the defendants replied, "We do not care to take more on these premises until occupied."

From the testimony it appears that the premises were unoccupied from September, 1912, before the issuance of the policy in October, until April, 1913, and from Christmas, 1913, for about eight weeks, and again from May 17, 1914, to the time of the fire on October 12th of that year.

It appears that the policy was written for the ordinary premium, without any additional charge for vacancy.

The defendant by brief statement alleged "that the plaintiff misrepresented a material fact in writing, viz, that the real estate to be insured by said policy was not mortgaged, when at the time of making said application said real estate was in fact encumbered

by a mortgage," and (2) That the buildings described in said application and policy became vacant in the summer and fall of 1914 and so remained vacant for more than thirty days prior to the fire . . . without the assent of the defendant, and that said buildings became vacant by the removal of the occupant.

The defendant's contention is that "inasmuch as the case shows that no extra premium was paid for vacancy, no vacancy permit was attached to the policy, that the expression 'vacant at present' carried with it the implication that the buildings were soon to be occupied as in fact they were; that when occupied, the insured was then living under the terms of the policy which was written as the ordinary policy is for the ordinary premium, . . . and the assured was bound, if a vacancy of more than thirty days should occur after the occupancy, to give the company notice." More than thirty days' vacancy did in fact exist, and no notice was given the company.

We think there is no merit in either contention in view of the admitted facts in the case. There is an entire absence of suggestion of fraud on the part of the plaintiffs, or fraud in fact shown in the case, which to be effectual was for the defendant to prove.

The letter of defendant's agent, which is here given, negatives the claim that the application in and of itself furnishes a defence to the action. The agent wrote the plaintiff on October 15, 1912, this letter:

"Mrs. Eva I. Maxwell,
        Mechanic Falls, Me.

*Dear Madam:*

Your son informed us the other day that the farm buildings were vacant, and would remain so during the winter. We have notified the company of the vacancy and requested of them permission for the same. They refuse it on the ground they do not care to insure vacant farm buildings.

The only thing we can do for you is to cancel this policy and give you back the portion of it not used, and write it in mutual companies. They are the only ones that will take vacant farm property.

You will find enclosed two applications for insurance, one-half of it to be in the York County Mutual and the other half in the Vermont Mutual. Kindly sign each of them in two places, near

the bottom, where cross is made with ink, and return them to me, and I will fill out the blank portions after I go out and examine the premises, which I shall have to do.

Very truly yours,

(Signed) J. P. HUTCHINSON.

(Encs. 2.)"

And following this the agent filled in such blanks as he had not already filled. It then contained the reference to the mortgage and the vacancy as well; in the latter case he had written "vacant at present."

*Richardson* v. *Maine Insurance Company,* decided in 1859, 46 Maine, 394, is cited as authority sustaining the defendant's contention that the representation that there was no mortgage on the property was material, though the company had no lien on the real estate mortgaged. There the insured wrote a letter to the agent of the insurance company for insurance. Thereupon the agent filled out an application which contained a statement that there was "no mortgage" on the property to be insured, and signed the name of the applicant to it without the latter's knowledge. A policy was issued referring to the application as a part of the policy and was accepted by the applicant. It was held that by accepting the policy, the plaintiff convenanted and engaged that the application contained a just, full and true statement in regard to the condition of the insured property, and that he thereby ratified the application; that the company was not bound by the letter from the assured to their agent, and that such representation was material.

Such was the law until the enactment of Chapter 34, Laws of 1861, which was amended by Chapter 115, Laws of 1862, to read as follows: "Sec. 2. An agent authorized by an insurance company whose name shall be borne on the policy, shall be deemed the agent of said company in all matters of insurance; any notice required to be given to said company, or any of its officers, by the insured may be given to such agent; any application for insurance or valuation or description of the property, or of the interest of the assured therein, if drawn by said agent, shall be conclusive upon the company but not upon the insured, although signed by him; all acts, proceedings and doings of such agent with the insured shall be as

binding upon the company as if done and performed by the person specially empowered or designated therefor by the contract.

"Sec. 3. All statements of description or valuation, in any contract of insurance or application therefor, shall be deemed representations and not warranties. Any misrepresentation of the title or interest of the insured, unless the same is fraudulnet or material, shall not prevent his recovering on the policy the amount of his insurable interest; a misrepresentation of title to a parcel of the property insured shall not affect the contract as to other parcels, either real or personal, covered by the policy."

The strict rule that parties to all contracts in writing are supposed to have the intentions which are clearly manifested by the terms thereof was there applied, (*Richardson* v. *Me. Ins. Co.*, supra) and in doing so the court say "in the case before us the conditions, etc., make a part of the contract. They are free from ambiguity and doubt. A statement in the application, which is one of the conditions, is not true in fact, though no moral wrong is imputed to the plaintiff. The court cannot withdraw this statement from its consideration. The parties have made it essential, and to disregard it would be the substitution of another contract for that made by the parties."

Following this decision this court had under consideration *Emery* v. *Piscataqua F. & M. Ins. Co.* 52 Maine, 322, where the interest of the assured was that of mortgagee, but that fact, or that his interest as such was to be insured, did not appear in the policy. There was no application, but the agent examined the premises and was fully informed as to the interest of the insured. The policy was in the same form as in *Richarson* v. *Maine Ins. Co.*, supra. The court held, (1) That, if there be an error in the description of the interest of the insured in the policy, it is imputable to the defendant's agent, and the policy is not void by reason thereof; and (2) That, if there had been a misrepresentation as to the interest of the insured, it would not prevent a recovery to the full amount of the interest insurable unless such misrepresentation was fraudulent. Appleton, C J., in noting previous decisions holding policies void for various causes affecting description of property, said, "these and similar decisions are made to depend upon the peculiar language of the policies *then under consideration*. To avoid their effect, the

Act of 1861, C. 34, entitled 'An Act in relation to Fire and Marine Insurance Companies and actions on contracts of insurance' was passed. The present policy is subsequent to the passage of the act referred to, and is subject to its provisions."

In *Caston* v. *Monmouth M. F. Ins. Co.,* 54 Maine, 170, where it was claimed that the representations in the application were material and untrue, the court say: "The case finds that the application for insurance, including the valuation and description of the property, was drawn up by the agent of the company, who 'knew all the facts about the ownership and occupancy.' " The statute of 1861, c. 34, sec. 2, makes an application thus drawn up conclusive upon the company, "although it contain a representation material and untrue."

Chap. 49, Sec. 93, R. S., after providing for service of notice or processes upon an agent of such company, provides further "that such agents and the agents of all domestic companies shall be regarded as in the place of the company in all respects regarding any insurance effected by them. The company is bound by their knowledge of the risk and of all matters connected therewith. Omissions and misdescriptions known to the agent shall be regarded as known by the company and waived by it as if noted in the policy."

In *Thorne* v. *Casualty Company of America* 106 Maine, 274, where the company issued a policy through a third party as agent, to whom application for insurance was made, there was nothing to show fraud on the part of the insured; but the warranty in the application that the insured was in sound condition was false, and so known to the agent. *Held,* that, though the company had no actual notice of the falsity of the warranty, it was liable on the policy, since it was the moving cause authorizing the transaction, of which the assured became an innocent victim.

In *Cole* v. *North British and Mercantile Insurance Co.,* 113 Maine, 512, it is held, that to avoid liability on a fire insurance policy on the ground of untrue statements in the proof of loss, it must be shown that the statements were knowingly and intentionally untrue, and the burden of showing it is on the company.

The application was furnished by the agent with directions to the plaintiff to sign "where the cross is made with ink, and return them to me, and I will fill out the blank portions," etc., etc. And

he did fill out all the answers, the reference to the mortgage as well as the other details. The case discloses that the plaintiff placed full reliance upon the agent and did just what he directed, and the agent did the rest. If there was mistake or misrepresentation, it is not shown to have been the act of the plaintiff or that the same was specially authorized by, or consented to by her. The act of the agent must therefore be held to have been the act of the defendant. See *Washburn* v. *Casualty Co.,* 108 Maine, 429; *Marston* v. *Life Ins. Co.,* 89 Maine, 266; *Hewey* v. *Ins. Co.,* 100 Maine, 523; 109 Maine, 323.

In *LeBlanc* v. *Standard Ins. Co.,* 114 Maine, 6, this court, by SAVAGE, C. J., in referring to Sect. 93, Chap. 49, R. S., supra, said: "The language of this statute is most comprehensive, and we think it was intended to be so. The statute itself seems to place no limits. The simple purpose of the statute is that those seeking insurance and those afterwards holding policies, may as safely deal with the agents, with whom alone they ordinarily transact their business, as if they were dealing directly with the companies themselves." . . . "The statute is best construed by interpreting it just as it reads. The agent stands 'in the place of the company,' is the company 'in all respects regarding any insurance effected by him.' "

As to the use of the words "vacant at present," we cannot adopt the defendant's view that the expression "carried with it the implication that the buildings were soon to be occupied." While it may have carried an implication that the buildings might be occupied, the contract of insurance was clearly effected on vacant property, which might so far as anything in the contract appears to the contrary, remain vacant during the period covered by the policy. The agent under date of Nov 11, 1912, wrote the plaintiff as follows: "Enclosed please find policy in one of the mutual companies that we were to get for you; the other would not go on the risk on account of its being vacant. This is all that we can do at present until it is occupied."

The plaintiff was justified in believing that the property was insured as vacant property, as it was in fact; that it was unoccupied and might be during the life of the policy was well known to the company as well as to the agent, and we find no warrant in holding that an occasional occupancy and consequent occasional vacancies,

as in this case, destroy the right to recover. The plaintiff procured insurance on vacant property. As such it was destroyed by fire. She was protected by the policy. The order directing the verdict was proper.

*Exceptions overruled.*