GORDON *v.* ST. PAUL FIRE & MARINE INSURANCE CO.

1. INSURANCE—FIRE INSURANCE—CONTRACTS—POLICY—REASONABLE REQUIREMENTS—VALIDITY.

   The provision of a fire insurance policy for the examination under oath of the insured by the company and stating that no action may be maintained on the policy unless such requirement has been complied with, is a reasonable and valid one, and generally enforceable, and one who without cause refuses to submit to such examination may not recover on the policy.

2. SAME—FIRE INSURANCE—EXAMINATION OF INSURED UNDER OATH.

   At such examination the insured is entitled to the presence of her attorney.

3. SAME.

There is no refusal by the insured to submit to such examination after the loss where she simply refuses to submit to an examination in the absence of her attorney, and the latter upon his return, and after commencement of an action, states that he is willing to arrange for an examination.

4. SAME—EVIDENCE—ADMISSIBILITY.

Evidence of a conversation between the insured, her husband, and defendant's agent at the time the insurance was solicited, relative to the premises being vacant, is admissible to show knowledge by the agent of the vacancy of the premises at the time the policy was negotiated.

5. SAME.

Evidence as to the construction placed upon the word "vacant" in the policy by defendant's agent at the time of the solicitation of the insurance was inadmissible, since the question whether a house was vacant within the meaning of the policy was a question of law for the court, but its admission was not prejudicial, the case, in its final analysis, becoming one for the court.

6. SAME—FIRE INSURANCE—TERMS OF POLICY.

The defendant fire insurance company was precluded from availing itself of the provision in the policy rendering it invalid where a loss occurs after the premises have been vacant for more than 10 days, where the premises were vacant at the time of solicitation of the insurance to the knowledge of the company and were vacant for several months before the loss, and it was immaterial that the premises were occupied within 10 days from the date of the policy, the controlling consideration being whether there was a change in condition of the premises from the condition known when the risk was accepted.[1]

7. COURTS—RULES.

The rule of *stare decisis* cannot be lightly brushed aside.

8. INSURANCE—FIRE INSURANCE—STATUTES—CONSTRUCTION.

Act No. 167, Pub. Acts 1897 (2 Comp. Laws 1915, § 9481 *et seq.*), and the standard policy act of 1905, Act No. 277, Pub. Acts 1905 (2 Comp. Laws 1915, § 9475 *et seq.*), were designed to curb the right of insurance companies to declare forfeitures and not to make them more available.

---

[1]As to effect, on provision as to vacancy, of agent's representations or knowledge, see note in 4 L. R. A. (N. S.) 758.

Error to Allegan; Cross, J. Submitted April 19, 1917. (Docket No. 136.) Decided July 26, 1917.

Assumpsit by Catherine Gordon against the St. Paul Fire & Marine Insurance Company on a policy of insurance. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Norris, McPherson, Harrington & Waer,* for appellant.

*Diekema, Kollen & Ten Cate,* for appellee.

FELLOWS, J. On June 7, 1913, defendant issued to plaintiff a Michigan standard form insurance policy for $1,200 on a dwelling house and $100 on a woodshed located a short distance from Saugatuck and beyond fire protection of that village. While a new policy was issued, it was a renewal with a small increase of the amount then carried. The policy was for three years, and took effect June 20th. The property was worth from $2,700 to $3,200. The agent of defendant solicited the insurance, and suggested that plaintiff take out insurance in a larger amount than she did, but she declined. The agent inquired if the house was vacant, and was told that it was. He asked if it would be vacant long and was told by plaintiff's husband that he did not think so. Plaintiff, over defendant's objection, was permitted to give evidence that she inquired of the agent whether she would get anything if anything happened while the house was vacant, and was told by him that it would not be vacant within the policy if she had some furniture in it, and visited it every ten days or two weeks. A tenant moved into the house in June and occupied it for some time, after which it was vacant again. Different tenants occupied it periodically. The last tenant moved out some five or six months prior to the total loss by

fire on June 12, 1916, the cause being unknown. Proof of loss was filed, and defendant denied liability. Such further facts as may be important will be detailed in connection with the discussion of the questions involved. The facts are not in dispute, and at the close of the case both parties asked for a directed verdict. After argument of the questions the court directed a verdict for the plaintiff for the amount of the policy with interest, and defendant brings the case here.

Two questions are presented on this record for review. One relates to the right to maintain the present action; the other goes to the whole merits of the case and reaches the right of the plaintiff to recover in any event.

The policy contains the following provisions:

"The insured, as often as required, shall   *   *   * submit to examinations under oath by any person named by this company, and subscribe the same.   * *   * No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

On September 8th, following the fire, defendant wrote plaintiff a letter demanding an examination under oath, and fixed September 13th, at 2 o'clock in the afternoon, at plaintiff's residence, as the time and place for such examination. Upon receipt of this letter she turned it over to her attorney. On the day fixed he had arranged to be in Columbus, Ohio, and gave her a letter to show defendant's attorney, stating that he had a previous engagement and advising her to state to him that she desired her attorney present at such examination. She declined to submit to an examination in the absence of her attorney. On September 14th, plaintiff's attorney wrote the company that he had commenced suit, but stated he would be glad to arrange for an examination of plaintiff. No ex-

amination of plaintiff was had, nor was any further attempt made by either side to arrange for one. Some heat appears to have been engendered over some of the negotiations preliminary to this suit, including the question of examining plaintiff. It is quite likely that counsel might, by consultation, have been able to arrange a day mutually agreeable for this examination and avoided any acrimony. We are concerned, however, with the legal rights of the parties, and do not feel called upon to determine for counsel the legal ethics involved in their controversy. The plaintiff was a witness upon the trial, and fully testified on both direct and cross-examination.

The provision of the policy above quoted is a valid one and as a general rule enforceable, and one who without cause refuses to submit to examination should be precluded from maintaining an action on the policy. The purpose of the examination is to elicit the facts in order that the company may determine whether it will defend or adjust the claim. It is not to be used solely to obtain partial, unfavorable, or inaccurate admissions from a party, to be used in future litigation.

In all cases arising under it the party to be examined is entitled to the presence of his or her attorney. *Thomas* v. *Insurance Co.*, 47 Mo. App. 169; *American Central Insurance Co.* v. *Simpson*, 43 Ill. App. 98. This is a reasonable condition, and changes no stipulations of the contract. The contract does not provide for a private examination of the insured, and there can be no reasonable objection to a *bona fide* request that such examination be conducted in the presence of the insured's attorney. In the instant case the plaintiff did not refuse to submit to an examination if it could be had when her attorney could attend. He was in Columbus, Ohio, the day fixed by defendant for the examination. He returned shortly. Under the circumstances of this case the request of the plaintiff that her

attorney be present when such examination took place did not amount to a refusal to submit to an examination so as to preclude her right of recovery.

The other question grows out of the following provision of the policy:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days, provided a loss shall occur on the property insured while such breach of condition continues or such breach of condition is the primary or contributory cause of the loss."

We have already stated the conversation between the plaintiff, her husband, and defendant's agent at the time the insurance was negotiated. It was admissible for plaintiff to show that defendant's agent had knowledge when the policy was written that the premises were vacant. It was inadmissible to show the agent's construction of the word "vacant" as used in the policy. Whether under a given state of facts a house is vacant within the meaning of the contract of insurance presents a question of law, and the agent's opinion could not bind the defendants or the courts. In this case the admission of this testimony was not prejudicial to the defendant as the case in the final analysis became one for the court.

Upon the undisputed facts the premises were vacant and unoccupied, to the knowledge of defendant's agent, and therefore to its knowledge, at the time the policy was issued, and at the time it took effect. Under the undisputed facts the premises were vacant and unoccupied at the time of the fire. In other words, the premises, when the contract of insurance was written and at its inception to the knowledge of defendant, were in the same condition as when the fire occurred. This court, in the case of *Aurora Fire & Marine Ins.*

*Co.* v. *Kranich,* 36 Mich. 289, had under consideration a policy of insurance containing a vacancy clause similar to, but not in the exact language of, the clause here involved. The agent, when he issued the policy, knew that the premises were vacant; they were vacant at the time of the fire. Speaking through Mr. Justice MARSTON, it was said:

"If, however, the property is unoccupied when the risk is taken, and there is no provision in the policy requiring the insured to make any change in this respect, we are of opinion the company would be liable under the policy for a loss occurring at a time when the property was vacant, even although it might appear that intermediate the date of issue of the policy and date of loss the property had been actually occupied. Under such circumstances the risk is in no way increased or changed. The property is in no worse situation at the time of the loss than it was when the policy was issued. The policy, although framed to carefully guard the rights of the company, makes no provision for such a state of facts, and the law will not step in and relieve the company from responsibility where the provisions of the policy have not been violated by the insured, and where the state of the property has at all times during the continuance of the policy been in as favorable a condition as it was when the policy was issued."

It is urged by the defendant that this case should not be followed, that legislation since enacted, together with construction put upon such legislation by the court, make the case no longer controlling, that in the *Kranich Case,* under the policy there involved and the then state of the law, vacancy rendered the policy void without revival, that this court was there dealing with a contract of insurance void for all purposes in its inception, if the company's theory was adopted, that under Act No. 167, Pub. Acts 1897 (2 Comp. Laws 1915, § 9481 *et seq.*), and the standard policy act of 1905 (Act No. 277, Pub. Acts 1905, 2 Comp. Laws

1915, § 9475 *et seq.*), vacancy without consent must exist for ten days before the forfeiture becomes effective, and upon the premises becoming occupied again the contract of insurance again attaches and becomes valid, that the policy becomes valid, or void, by the action of the insured, and that in the instant case the policy was valid for the ten days following the 20th day of June, and that, inasmuch as it was occupied during that period, the policy was valid until the premises were again vacant and remained so for a period of ten days, and that, the loss having occurred after the premises had been vacant for several months, the forfeiture for vacancy was available to defendant, and the following cases are cited: *England* v. *Insurance Co.*, 81 Wis. 583 (51 N. W. 954, 29 Am. St. Rep. 917) ; *Moore* v. *Insurance Co.*, 199 Pa. 49 (48 Atl. 869, 85 Am. St. Rep. 771) ; *Queen Ins. Co.* v. *Chadwick,* 13 Tex. Civ. App. 318 (35 S. W. 26). The reasoning of counsel and the cases cited, together with the case of *Royal Ins. Co.* v. *Lubelsky,* 86 Ala. 530 (5 South. 768), might be quite persuasive if this were a case of first impression in this jurisdiction; but it is not. The rule *stare decisis* cannot be lightly brushed aside; nor are we persuaded that the legislation to which we have referred should be given the effect contended for. This legislation was not designed to make forfeitures more available to insurance companies, but was designed to curb the right to declare forfeitures. Nor are we persuaded that we should adopt the argument of counsel that because the contract contained the words "and so remain for ten days" that the contract of insurance was a valid one, and so remained for ten days, and, being a valid contract for ten days, the doctrine of the *Kranich Case* should not apply. The plaintiff did not contract for insurance for ten days; she entered into a contract of insurance for three years, paid the premium for that period, and did not

contract in the policy to make any change in the then existing conditions. It is not, as we view it, a question of whether the contract was valid at its inception and so continued for ten days, but rather: Was there a change of condition of the premises from the condition known to the company when it accepted the premium and assumed the risk?

The *Kranich Case* and kindred cases proceed on the theory that the insurance company is estopped from asserting a forfeiture for a condition of the premises existing at the time of the fire, which existed to the knowledge of the company at the making of the contract, and which condition of the premises it was not agreed by the contract of insurance was to be changed. We have recently applied this doctrine. *Blake* v. *Insurance Co.*, 194 Mich. 589 (161 N. W. 890) ; *Marx* v. *Insurance Co.*, 192 Mich. 497 (158 N. W. 1052) ; *Simpson* v. *Insurance Co.*, 184 Mich. 547 (151 N. W. 610).

In the *Blake Case* the policy prohibited the use of chimneys, unless constructed of brick or cement. But the agent knew at the time he took the application that one of the chimneys was not constructed of brick or cement, although the contrary was stated in the application. Its condition was the same at the time of the loss as at the time of the application. It was held that the company could not avoid payment on the grounds of fraud in the application.

In the *Marx Case* it was provided in the policy that it should be void if illuminating gas or vapor was generated in the building. At the time of the issuance of the policy, to the knowledge of the agent, illuminating gas was generated, and it was used under a different method at the time of the fire. The plaintiff was permitted to recover, notwithstanding the clause of the policy, and it was said by Mr. Justice Ostrander, speaking for the court:

"It is conceded that the indicated forbidden thing

existed when the policy was issued, and that the defendant's agent knew it. It is not claimed that, if no change had been made in the method of generating gas, or vapor, for lighting, the policy would be avoided. But as the defendant's knowledge of the situation was imputed, and its knowledge of the change in method is not and cannot be imputed, the contention is that the condition stands violated, with the same effect as though no knowledge of conditions had ever come to defendant. The obvious, and in my opinion the conclusive, answer to this reasoning is that the condition relied upon was waived when the policy was issued; that is, it was agreed in essence that generating illuminating gas, or vapor, in the described building or adjacent thereto, would not avoid the policy. Defendant is charged with knowledge of the condition existing when the policy was issued, and the condition had not changed when the fire occurred. There was no new, or other, or different, breach of the policy condition after the policy was issued."

In the *Simpson Case* the policy had a rider attached stating that the policy covered the premises while occupied as a private dwelling. The premises were occupied at the time the insurance was procured and when burned as a mission house. It was claimed that the agent at the time the insurance was procured had knowledge of this fact. This court held that if he did have such knowledge the plaintiff was entitled to recover and the defendant estopped, and a large number of authorities from this and other jurisdictions are cited and discussed by Mr. Justice MOORE.

The law as announced in the *Kranich Case* must be regarded as the settled law of the State. It is, we believe, in accordance with the weight of authority.

If we carefully examine the cases apparently holding a contrary doctrine, we find that in *England* v. *Insurance Co., supra,* the defendant did not have knowledge of the condition of the premises, unless knowledge was imputed to it. In the case of *Royal Ins. Co.* v. *Lubelsky, supra,* it was held that the language of

the policy showed a mutual expectation of the contracting parties, not amounting to a warranty, however, that the house was to be occupied as a dwelling. In *Moore* v. *Insurance Co., supra,* and *Queen Ins. Co.* v. *Chadwick, supra,* the company had knowledge that the premises were unoccupied when the policy was issued.

We naturally turn to New York on this question, due to the fact that we take our standard policy law from that State. In *Bennett* v. *Insurance Co.,* 106 N. Y. 243 (12 N. E. 609), Mr. Justice Andrews, speaking for the court, said:

"The defendant insists that treating the policy as having taken effect as a valid contract of insurance upon an unoccupied dwelling, there was a breach of a condition subsequent contained in the policy which rendered it void. The policy was issued in August, 1876, for the term of three years. In April, 1878, a tenant was let into possession of the house, and occupied it until November, 1878, when he moved out, and the house remained unoccupied from that time until the fire, July 17, 1879. The claim is that, although the house was insured as unoccupied, yet, as the plaintiff afterwards, during the life of the policy, occupied it for a time by tenant, he could not thereafter discontinue the occupation during the subsequent life of the policy, and leave the premises vacant without forfeiting the insurance. The policy contains these among other conditions:

"'If the dwelling house or houses hereby insured shall cease to be occupied by the owner or occupant in the usual and ordinary manner in which dwelling houses are occupied as such, or be so unoccupied at the time of effecting insurance, and not so stated in the application, then, and in every such case, or in either of said events, this policy shall be null and void until the written consent of the company at the home office is obtained.'

"The defendant bases his contention upon the first of the conditions above quoted. It is plain, we think, that this condition was intended to protect the company against an increase of risk, by leaving premises vacant which were occupied at the time the insurance

was effected, and that it has no application to a risk taken on an unoccupied dwelling house."

In the case of *Cross* v. *Insurance Co.*, 132 N. Y. 133 (30 N. E. 390), Mr. Justice Brown, speaking for the court, said:

"While the policy contains the usual conditions declaring it void if the plaintiff was other than the sole and unconditional owner, or if the buildings were on ground not owned by the insured in fee simple, or if it should become or remain vacant or unoccupied for ten days, the court held that these conditions were waived, and the evidence clearly supported that conclusion. The plaintiff's son was the general agent of the defendant, and personally examined the buildings before issuing the policy and knew that they were vacant and unoccupied."

Among other New York cases considering this question see *New York Mutual Savings & Loan Ass'n* v. *Insurance Co.*, 110 App. Div. 760 (97 N. Y. Supp. 436), where many of the authorities are cited and considered; *Blass* v. *Insurance Co.*, 18 App. Div. 481 (46 N. Y. Supp. 392) ; *Short* v. *Insurance Co.*, 90 N. Y. 16 (43 Am. Rep. 138) ; *Bear* v. *Insurance Co.*, 34 Misc. Rep. 613 (70 N. Y. Supp. 581).

In the case of *Maxwell* v. *Insurance Co.*, 114 Me. 170 (95 Atl. 877), Mr. Justice Hanson, speaking for the court, said:

"The plaintiff was justified in believing that the property was insured as vacant property, as it was in fact; that it was unoccupied and might be during the life of the policy was well known to the company as well as to the agent, and we find no warrant in holding that an occasional occupancy and consequent occasional vacancies, as in this case, destroys the right to recover. The plaintiff procured insurance on vacant property. As such it was destroyed by fire. She was protected by the policy."

In *Chamberlain* v. *Assurance Co.*, 80 Mo. App. 589, it was said:

"The second reason justifying the action of the trial court is that the facts in evidence warranted an inference that the agent who issued the policy was fully aware that the building was unoccupied when he delivered the contract of insurance, and by so doing intended to waive the provision avoiding the policy in case the premises were vacant or unoccupied for ten days. That such an agent may by his agreements, acts, or conduct waive the provisions for its forfeiture contained in a policy of insurance and estop his non-resident principal from enforcing such forfeitures. is now the settled law in this State."

The court of appeals of Kentucky had the question before it in the case of *London & Lancashire Ins. Co.* v. *Gerteisen,* 106 Ky. 815 (51 S. W. 617), where a policy of insurance had been issued on a distillery not in operation when insured, and the title was not complete in the insured, but these facts were known to the agent. It was held that the insurance company would not be allowed to rely on conditions in the policy forfeiting it, and avoid it for these reasons, if at the time it issued the policy the facts were known to it.

In the case of *Rochester Loan & Banking Co.* v. *Insurance Co.,* 44 Neb. 537 (62 N. W. 877, 48 Am. St. Rep. 745), the court had before it a policy containing a forfeiture clause for vacancy. The premises were vacant to the knowledge of the agent when the policy was issued and were vacant when the fire occurred. It was said by the court:

"It would seem almost unnecessary to cite authorities to show that, since the insured property was vacant and unoccupied at the date of the issuance of the policy in suit, which fact was actually known by the insurance company, and with that knowledge actually before it, it chose to insure the property, that in doing so it elected to and did waive the conditions in the policy that the same should be void if the property was at the time it was insured vacant. The knowledge of the agents of the insurance company that the property was vacant at the date of the issuance of the

policy was the knowledge of the company. Notice to an insurance agent who issues a policy of facts relating to the subject-matter of the insurance is notice to the company, and if he fails to properly state them in the policy when relied upon and trusted to do so, the company should not be permitted to escape liability on that ground."

The *Kranich Case* is cited and quoted from in support of the conclusion reached by the court. The holding was followed in *German Ins. Co.* v. *Frederick,* 57 Neb. 538 (77 N. W. 1106).

It was said by the court in *Germania Life Ins. Co.* v. *Klewer,* 27 Ill. App. 590:

"The vacancy of the building, however, is no defense for appellant. When the policy sued on was issued, the house was unoccupied, and had been in that condition for several weeks. Of this appellant's agent had full notice when the policy in question was issued. No objection was then made to the vacancy, nor did appellee promise to have the house occupied. The injustice of permitting appellant to now deny its liability on that ground is apparent. To deliver a policy with full knowledge of the facts upon which its validity may be disputed, and then to insist upon these facts as ground of avoidance, is to attempt a fraud. This the courts will neither aid nor presume, but prefer to find there was an intent to waive the known ground of avoidance."

The Kansas court of appeals had the question before it in the case of *Milwaukee Mechanics' Ins. Co.* v. *Brown,* 3 Kan. App. 225 (44 Pac. 35). We quote from the syllabus:

"If an insurance agent, knowing that premises sought to be insured are unoccupied, issues a policy of insurance thereon, using the form containing a clause which declares that the policy shall become void in case the premises be or become vacant and unoccupied and so remain for 10 days, and if he fails to strike out such clause, the fault being that of the agent, and not of the insured, it operates as a waiver of such

conditions on the part of the company, and it will be liable in case of a loss. Held, further, that if, in negotiations between the agent and the assured, no time was definitely fixed within which the premises should be occupied, the policy would continue valid until the company or its agent notified the assured that it elected to cancel the policy and refund the premium."

The supreme court of Iowa had the question before it in *Williams* v. *Insurance Co.*, 50 Iowa, 561, and it was there said:

"We have, then, this case: The company, with full knowledge the house was unoccupied, and would be for a time, issues the policy and receives the premium, and then, after a loss occurs, insists it is not bound, and the policy never had a legal existence because said house was vacant. Having issued the policy, taken the premium, and thereby induced the plaintiff to believe she was insured, the defendant is estopped from alleging or proving the policy never had a legal existence. By issuing the policy the defendant waived the conditions as to the occupation of the building, and also that such waiver should be expressed on the policy in writing."

The States of California and Virginia are in accord with these holdings. See *West Coast Lumber Co.* v. *Insurance Co.*, 98 Cal. 503 (33 Pac. 258); *Georgia Home Ins. Co.* v. *Kinnier*, 28 Grat. (69 Va.) 88.

It may be, as claimed by defendant, that unoccupied buildings, particularly those which do not have fire protection, are a greater hazard than those similarly situated which are occupied; we must so assume upon this record, as uncontradicted testimony to this effect was given upon the trial. While in the view we take of this case it is not controlling, it may be significant that there was no testimony given that a different rate is charged, or, if charged, what the rate would be, or that the rate collected on the policy sued upon did not take such additional hazard into consideration; in other words, there is no testimony on this record that,

if a higher rate is charged for unoccupied property, it was not collected in the instant case. The rate collected was the rate fixed by the company, with knowledge that the premises were vacant when the policy was issued.

The loss occurred when the premises were in the same condition, to the knowledge of the company, as when the contract of insurance was entered into; there was no agreement in the policy that the condition of the premises should be changed; under the authorities cited the defendant is liable, and the defense here invoked is not available to it.

It follows that the judgment should be, and it is, affirmed, with costs to plaintiff.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.