NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0353n.06

Case Nos. 18-2035/2120

**FILED**
Jul 11, 2019
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DOKA DURASEVIC; HANA DURASEVIC,       )
                                      )
    Plaintiffs-Appellants/Cross-Appellees,   )
                                      )
                                      )   ON APPEAL FROM THE UNITED
v.                                    )   STATES DISTRICT COURT FOR
                                      )   THE EASTERN DISTRICT OF
                                      )   MICHIGAN
GRANGE INSURANCE COMPANY OF           )
MICHIGAN,                             )
                                      )
    Defendant-Appellee/Cross-Appellant.   )
                                      )

BEFORE: NORRIS, CLAY, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. After a fire damaged their house, Doka and Hana Durasevic filed a claim with their insurer, Grange Insurance Company. Unable to examine the Durasevics' son under oath and unable to obtain financial and phone records from the Durasevics, Grange denied the claim. The Durasevics filed this lawsuit in state court seeking coverage. After Grange removed the case to federal court, the district court granted Grange's motion for summary judgment. We affirm.

I.

Two fires hit the Durasevics' home in just seven months. The first one occurred in the fall of 2015. At the time, Doka and Hana Durasevic lived with their two sons, their daughter-in-law, and their grandchild in a home in Macomb, Michigan, about 30 minutes north of Detroit. In

late September, their house caught fire after some cooking efforts went awry. The Durasevics filed an insurance claim, and Grange paid them over $600,000. Grange paid for the family to live in an apartment temporarily due to damage to their home.

The second fire occurred in late April of the next year. While the family still lived in the apartment, a neighbor noticed a fire in their home and called the fire department to put it out. The Durasevics filed a second insurance claim—the one at issue—seeking about $330,000 for the additional damage. In reviewing the new claim, Grange hired a private investigator who determined that someone intentionally started the April fire. Grange also discovered that one of the Durasevics' sons, Niko, had been at the house the night of the fire. To determine how much coverage, if any, it should provide, Grange asked the adult family members to submit to examinations under oath and asked Doka and Hana to hand over tax, bank, phone, and Facebook records. Niko and daughter-in-law Samantha refused to make themselves available for a full examination. And the Durasevics never gave Grange the requested documents.

Grange denied coverage. Doka and Hana filed this breach-of-contract action in Michigan state court. Grange removed the case to federal court. After discovery, the district court granted Grange's motion for summary judgment, reasoning that the Durasevics did not honor the conditions in the policy and could not recover.

## II.

We review the district court's summary judgment decision afresh, giving the Durasevics the favor of all fair factual inferences, to see if a material factual question prevents a decision as a matter of law. *Sims Buick-GMC Truck, Inc. v. Gen. Motors LLC*, 876 F.3d 182, 185 (6th Cir. 2017).

As a matter of law, Grange offered ample reasons for denying coverage.

Start with the examinations under oath. The Durasevics' insurance policy requires, as a precondition of coverage, that "the insured person . . . submit to examinations under oath." R. 5-1 at 24. The policy defines "insured person" to include the person named in the insurance agreement *and* that person's relatives who live in the same house. Niko and Samantha count as insured persons under the definition. Yet they failed to appear for examinations under oath after repeated requests that they do so.

Nor can anyone reasonably deny that interviewing Niko and Samantha served a material purpose in Grange's review of the Durasevics' claim. Grange suspected that Niko intentionally set the fire, prompting the need to talk to him about what he saw that evening when he was at the house. It's true that the policy permits Doka and Hana to recover if Niko committed arson acting alone. But that doesn't alleviate the need to find out how the fire started or whether Doka and Hana knew about or had connections to Niko's actions. The violation of this condition precedent precludes recovery. *See Gordon v. St. Paul Fire & Marine Ins. Co.*, 163 N.W. 956, 957 (Mich. 1917); *Yeo v. State Farm Ins. Co.*, 555 N.W.2d 893, 895 (Mich. Ct. App. 1996).

The Durasevics also failed to give Grange the information it requested, thus failing to live up to that independent end of the insurance bargain. The policy required, as another condition precedent, that the insured "cooperate with [Grange] in the investigation of a claim." R. 5-1 at 24. On multiple occasions, Grange asked the Durasevics to provide tax, bank, phone, and Facebook records to investigate whether to cover the fire damage. That information, too, was hardly irrelevant; it went to whether the Durasevics committed fraud by starting the second fire. *See Smith v. Mich. Basic Prop. Ins. Ass'n*, 490 N.W.2d 864, 869–71 (Mich. 1992); *Mich. Basic Prop. Ins. Ass'n v. J.T. Hair Designs*, No. 204949, 1999 WL 33409938, at *2 (Mich. Ct. App. Nov. 19, 1999) (per curiam). It was assuredly fair game for Grange to look into any motive for

arson in the aftermath of a second fire within a year at the same house, including the possibility that the family faced financial stress. Adding to the suspicion, the Durasevics, at the time of the second fire, still hadn't used any of the $600,000 Grange gave them on their first claim to start repairing their house. Yet the Durasevics nonetheless refused to send Grange financial documents (whether bank records or tax returns) that would disclose their financial position. Having neglected their duty to provide the requested information, the Durasevics cannot recover. *See Allen v. Mich. Basic Prop. Ins. Co.*, 640 N.W.2d 903, 907 (Mich. Ct. App. 2001) (per curiam).

The Durasevics lodge a litany of objections to this conclusion.

As to the examinations, they claim that the policy language points the other way. Because the policy says "the insured person" instead of "all insured persons," they argue, only the named insured or the people filing the claim (Doka and Hana, not Niko and Samantha) must submit to an examination under oath. But the policy defines "insured person" to mean multiple people. Even when the policy says "the insured person," that covers "you," "your relatives," "and . . . any other person" under 21 who lives in the house and is under "your" care. R. 5-1 at 10. By contrast, the policy uses a different approach in describing duties limited to the named insured. It defines "you" and "your" as the named insured and that person's spouse. *Id.* And it uses "you" and "your" rather than "insured person" in many places, including to describe some contractual duties. When a policy uses different terms in different ways, it's fair to infer that the difference conveys a difference in meaning. *See McNeel v. Farm Bureau Gen. Ins. Co. of Mich.*, 795 N.W.2d 205, 214–16 (Mich. Ct. App. 2010); *cf. U.S. Fid. & Guar. Co. v. Mich. Catastrophic Claims Ass'n*, 795 N.W.2d 101, 107–09 (Mich. 2009). The policy required Niko and Samantha to sit for examinations under oath.

Doka and Hana insist that we should not hold them accountable for Niko's and Samantha's failures, invoking the innocent insured doctrine. In *Morgan v. Cincinnati Insurance Co.*, the Michigan Supreme Court addressed an insurance provision that voided a policy for fraud, a requirement mandated by Michigan law. 307 N.W.2d 53, 54–55 (Mich. 1981). The Court read "the insured" in that provision to cover only "the insured who committed the fraud and makes [a] claim under the policy," *id.* at 54, reasoning that the legislature did not mean to leave innocent insureds high and dry if their spouses, say, committed fraud, *id.* at 55. As the Durasevics see it, this exception applies here because it was Niko and Samantha, not the parents, who failed to satisfy the examination condition.

But the Michigan courts apply this doctrine only to intentional wrongdoing that created the claim, like starting an intentional fire. *See Borman v. State Farm Fire & Cas. Co.*, 521 N.W.2d 266 (Mich. 1994). Best we can tell, the Michigan Supreme Court has never applied the doctrine to failures to fulfill procedural obligations necessary to investigate the claim. At least one intermediate appellate court in Michigan has said that the doctrine does not apply "to an insured's failure to satisfy a condition precedent under a policy." *Appleton v. Westfield Ins. Co.*, No. 260875, 2006 WL 2519532, at *7 (Mich. Ct. App. Aug. 31, 2006) (per curiam). Consistent with Judge Drain's reasoning, we don't think the Michigan Supreme Court would extend the doctrine here. *Cf. Bazzi v. Sentinel Ins. Co.*, 919 N.W.2d 20, 24–29 (Mich. 2018) (refusing to resurrect an innocent third-party doctrine in car insurance cases based on policy grounds similar to those underlying the innocent insured doctrine).

That leaves us with run-of-the-mine contract interpretation rules. *Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 193–94 (Mich. 1999). Under those rules, as we've shown, Niko and Samantha had to sit for an examination under oath. Their failure to do so

prevents the Durasevics from recovering on the insurance claim under the policy's joint obligations provision, which makes Niko's and Samantha's "failures to act . . . binding" on the rest of the Durasevics. R. 5-1 at 37.

The Durasevics separately resist summary judgment on the ground that a factual question remains over whether they substantially complied with the policy's conditions. Michigan courts, it is true, excuse parties' failure to follow all of a policy's requirements if they substantially perform. *Gibson v. Grp. Ins. Co.*, 369 N.W.2d 484, 486 (Mich. Ct. App. 1985) (per curiam); *see Yeo*, 555 N.W.2d at 895. And the Durasevics, it is true, complied with some requirements. For example: Doka, Hana, and their other son Viktor submitted to inquiries, and the family provided some (non-financial) documents and signed a third-party authorization form.

But that did not suffice. The purpose of the examination and document conditions was to allow Grange to determine whether to pay or adjust the claim. *See Gordon*, 163 N.W. at 957. It needed to determine whether Niko intentionally set the fire and, if so, whether he had any help from other family members in doing so. That made the testimony from Niko essential, and he refused to say anything, whether under oath or not. *See Cruz v. State Farm Mut. Auto. Ins. Co.*, 614 N.W.2d 689, 695 (Mich. Ct. App. 2000). Grange needed the family's financial and other records to confirm or eliminate any possible motive behind or connection to Niko's suspected fraud. Although the third-party authorization form gave Grange the ability to obtain some of the Durasevics' records, Grange needed additional approval to access their tax documents. The Durasevics also ignored Grange's requests that they turn over certain bank, phone, and Facebook records. At his examination, Doka Durasevic acknowledged requests for all of those documents. He said that he had his tax returns. And the lawyer with Doka at the examination said he would send the documents to Grange. Yet Grange never received any of them.

In the absence of Niko's testimony and the Durasevics' financial and phone records, Grange could not determine whether to pay the claim, the central concern of those policy conditions. The Durasevics did not substantially comply and thus cannot recover.

Because Grange's cross-appeal raises an *additional* ground for affirming the district court, we need not reach it.

We affirm.