KNOP *v*. NATIONAL FIRE INSURANCE CO.

| 107 | 323 |
| s65NW | 228 |
| 132 | ¹559 |
| 107 | 323 |
| 142 | ¹ 36 |
| 142 | 172 |

1. Fraud—Instructions to Jury.

   An instruction in a civil action that, where fraud is sought to be proved by circumstantial evidence, "all of the circumstances must point to the one thing claimed, and admit of no other reasonable explanation," is erroneous, in that it requires such fraud to be established beyond a reasonable doubt.

2. Fire Insurance—Breach of Conditions—False Swearing.

   A fire policy provided that, in case of loss, the insured should submit to an examination under oath, if required by the insurer, and that any fraud or false swearing by the insured should avoid the policy. Upon an examination so had, the insured included in his statement of loss a sewing machine, which had not been destroyed. In an action on the policy, he testified that, at the time of making such affidavit, he thought that the machine had burned, but that he afterwards ascertained to the contrary. The machine was subsequently discovered in an out-building, underneath some wood, admitted to have been drawn and piled by the insured the day before the fire. *Held*, that an instruction that the policy was avoided by the false statement of the insured was properly refused.

   Grant, J., dissented, being the opinion that, if the affidavit was not intentionally false, the facts showed it to have been made in such disregard of plaintiff's duty under the contract as to vitiate the policy.

Error to Wayne; Donovan, J.   Submitted November 7, 1895.   Decided December 10, 1895.

*Assumpsit* by August Knop against the National Fire Insurance Company of Hartford, Connecticut, on a fire policy.   From a judgment for plaintiff, defendant brings error.   Reversed.

*Elbridge F. Bacon*, for appellant.

*E. S. Clarkson*, for appellee.

Grant, J.   This is an action to recover for loss by fire upon a policy of insurance which covered $300 on a

one-story dwelling house, and $300 on household furniture and other contents. The principal defense was that the plaintiff had made a false statement under oath of the amount of the loss, and that he himself set the fire with intent to defraud the defendant.

1. The circuit court instructed the jury as follows:

"Now I come to a very important question. It is called in law 'fraud.' Fraud is a trick, a deceit, a device, whereby one misleads another to do something to his prejudice. In law, however, it is not to be presumed. It is not even to be guessed at, and not arrived at by slight circumstances. It must be proven the same as any other substantial fact in the case. The burden of proving fraud is upon the one that claims it,—the one that charges it,—because it is out of the ordinary. It may be proven by circumstantial evidence; but if proven by circumstantial evidence, the rule of circumstantial evidence being a rather strict one, it must be proven with force and conclusiveness to this degree,—that all the circumstances (where circumstances are relied upon to make the proof) must point to the one thing claimed, and admit of no other reasonable explanation. That is the rule always for circumstantial evidence,—that this must always converge or direct your mind between the points, and not admit of any other reasonable explanation."

The error in this charge is manifest. It virtually instructed the jury that the defense must be established beyond a reasonable doubt. *Morley* v. *Insurance Co.*, 85 Mich. 219. In that case the erroneous instruction was as follows: "Proof of fraud should be of such a character as to be inconsistent with any other view than that Mr. Lenhoff was guilty of fraud." In the present case the court instructed them, in substance, that the facts relied upon to show fraud must not admit of any other reasonable explanation. It is perhaps fair to the jury in this case to say that they must have understood this instruction to mean that they must find the fraud proven beyond any reasonable doubt, for they were not controlled in their verdict by the clear preponderance of the evi-

dence.   The above instruction was given near the close
of the charge, and there is no other language in it to ex-
plain or modify it.   The charge, in fact, is entirely silent
as to the preponderance of evidence.

2.  Shortly after the fire, the general agent of the de-
fendant investigated the loss.   An examination of the
house, which was not entirely destroyed, and the con-
tents, aroused his suspicion.   Plaintiff had made a list of
the property which he claimed to have been destroyed.
By the terms of the policy (a Michigan standard policy),
he was entitled to place the plaintiff under oath, and
examine him in regard to the loss.   To this plaintiff made
no objection, and they went before a justice of the peace
with a stenographer and an interpreter.   Among other
things, plaintiff said in his affidavit that "there was in
the house when it burned one Domestic sewing machine,
which I purchased from Albert Janke.   *   *   *   This
sewing machine was burned up in the dwelling.   I found
some of the castings after the fire.   They are now in the
stable."   The machine was not burned, but, with other
household goods, was covered up by firewood in a small
barn or shed in the rear of the house.   Plaintiff admits
that on the Sunday morning before the fire, about half
past 4, he commenced to wheel two one-horse wagon
loads of wood into this shed, and that he wheeled it all
in that morning.   This was stated in his affidavit before
the justice.   The fire occurred the next morning, about 10
o'clock.   The plaintiff was at his work in a factory near
by; his children had been left at a neighbor's; and his
wife had gone to Detroit.   It is insisted by the defendant
that the statement above quoted was false in fact, and
therefore rendered the policy void.   It is conceded by
plaintiff's counsel in his brief that plaintiff stated that
the machine was burnt up, but it is contended that he
made a reasonable explanation of this when he testified
that when he made out the list, and swore to it, he
thought the machine had burned up, but he found out

afterwards that it was in the barn. This is the only explanation given by him of his false affidavit.

The policy contains the following clause:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance, or the subject thereof, whether before or after a loss."

The defendant requested the court to instruct the jury that this false statement rendered the policy void. This was refused, and the court instructed the jury as follows:

"If any of the property which the plaintiff swore was burned was not in fact destroyed, and the plaintiff knew of that fact when he made an affidavit, such swearing would be false swearing, within the meaning of the policy, and would void the policy, and the defendant would be entitled to a verdict. An intentional false affidavit made by the insured in regard to the loss of personal property would void the policy, not only as to personal property insured in the policy, but also as to the buildings insured in the policy; and the plaintiff would not be entitled to recover for any part of his insurance if such false affidavits were made, and intentionally made, because that would be deceiving. If you find from the testimony that the plaintiff made a false statement in regard to the property burned up for the purpose of defrauding the company, such statement would render void the policy, and the plaintiff could not recover."

This policy was in the form authorized by the insurance law of this State. The purpose of the examination of the assured under oath is to give the insurer the opportunity to investigate promptly into the circumstances of the loss, and to ascertain what property was destroyed while the facts are fresh in the mind of the assured. Usually, the assured alone knows what articles of personal property were destroyed by the fire. The insurer is usually compelled to rely upon his statement. He is

therefore bound to act in good faith, and to base his sworn statement of the loss upon his own actual knowledge. The law will not permit him to make reckless statements, which are untrue, and then say that he was mistaken, and honestly thought the articles were destroyed. The affidavit must be based upon his knowledge, not upon his belief or his thoughts; otherwise, this provision of the law and of the policy is substantially worthless to the insurer, who in most cases has no alternative but to rely upon this sworn statement. In a similar case the court used this language:

"A policy of insurance is a contract, in the making of which peculiar and great confidence must, of necessity, be reposed by the insurer in the insured. Good faith and fair dealing are especially required by the former of the latter. The former must mainly depend on the oath of the latter, and the account he may render, to show the fact of the loss of the property insured, and the amount of the damage incurred by him, for which he claims indemnity under the policy." *Moore* v. *Insurance Co.*, 28 Grat. 517.

In another case it was held that where the assured relied upon the statement of his wife as to the articles destroyed, which was in fact false, he could not recover, although he intended no fraud. It was said: "If he made representations assuming to know the facts, when he had no knowledge, and such statements turned out to be false, it was a fraud within the meaning of the policy." *Mullin* v. *Insurance Co.*, 58 Vt. 113.

In a similar case the Supreme Court of the United States said:

"The object of the provisions in the policies of insurance, requiring the assured to submit himself to an examination under oath, to be reduced to writing, was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts material to their rights, to enable them to decide upon their obligations, and to protect them against false claims. And every interrog-

atory that was relevant and pertinent in such an examination was material, in the sense that a true answer to it was of the substance of the obligation of the assured." *Claflin* v. *Insurance Co.*, 110 U. S. 94.

If the testimony of the plaintiff's wife was true, the sewing machine had not been in the house for two months. The day before, he had piled the wood around and above this machine and other household goods in the shed. If he did not know that the statement was false, he could readily have ascertained the fact from his wife, of whom he would naturally inquire, and whose assistance he would obtain in making out the list of her own and the children's clothing and household goods. He gave no intimation that any goods were covered up in the barn, and did not disclose the fact, until several days after the fire, when Mr. Row (defendant's agent) had removed the wood, and discovered the machine and the other concealed property. Plaintiff assumed to speak positively and from actual knowledge, upon which he intended to rely in settling the loss. If the affidavit was not intentionally false, it was made in utter disregard of his duty under the contract, and was a false statement, within the language of the policy, and vitiated it.

Judgment should be reversed, and no new trial ordered.

LONG, J. We concur with Mr. Justice GRANT on the first point in his opinion, and for that reason a new trial must be granted. Upon the second point, we think the court properly refused the request to charge.

McGRATH, C. J., MONTGOMERY and HOOKER, JJ., concurred with LONG, J.