**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 17, 2002**

PETER CRUZ, JR.,

    Plaintiff-Appellee,

v

No. 117505

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

We granted leave to appeal to consider whether the inclusion of an examination under oath (EUO) provision in an automobile no-fault insurance policy is permitted under the Michigan no-fault insurance act. MCL 500.3101 *et seq.* We hold that EUO provisions may be included in no-fault policies, but are only enforceable to the extent that they do not conflict with the statutory requirements of the no-fault act. Because the insurer in this matter, State Farm Mutual Automobile Insurance Company, impermissibly sought to enforce

the EUO as a condition precedent to its duty to pay no-fault benefits, this brought the EUO provision into conflict with the requirements of the no-fault statute. The EUO provision must yield to the statute. Accordingly, the Court of Appeals judgment in favor of plaintiff is affirmed, albeit for different reasons.

I

Plaintiff was injured in an automobile accident while driving a car insured by State Farm. The State Farm no-fault policy provided coverage for no-fault benefits as required by the no-fault act, as well as coverage for bodily injury that was caused by an uninsured motorist and assorted other standard coverages such as comprehensive and collision coverages. After the accident, plaintiff submitted a claim under the policy for both no-fault personal injury protection (PIP) benefits and for uninsured motorist bodily injury benefits. He provided State Farm with what has been acknowledged by State Farm[1] to be reasonable proof of the fact and of the amount of the loss sustained (the statutory requirement of what an insured must give to the insurer to make benefits payable pursuant to MCL 500.3142[2] of the no-fault act). Notwithstanding this compliance by the insured

_____

[1]State Farm conceded at oral argument that it was "provided with the information that the statute requires. [State Farm was] given I was injured on such and such a date, this is what happened, these are my injuries, here are my medical providers, here is the authorization for my wage loss. That's enough to allow a carrier in most cases within thirty days to investigate that and start cutting checks."

2

with the statutory requirement, because State Farm had in its policy a provision that conditioned payment of benefits on the submission by the insured to an EUO as often as reasonably asked,[2] it declined to pay until the EUO was given. It was State Farm's position that the parties could agree in their contract of insurance, notwithstanding the requirements of the statute regarding prompt payment of benefits, to condition the payment of benefits on the submission by plaintiff to an EUO. Plaintiff refused repeated requests to submit to the EUO, and, because of this, State Farm denied plaintiff's claims for both no-fault PIP benefits and uninsured motorist benefits.

Plaintiff then requested arbitration of his claim for uninsured motorist benefits pursuant to an arbitration provision in the uninsured motorist section of the policy.[3] State Farm refused to arbitrate on the basis, again, that plaintiff had, by refusing to submit to an EUO, breached a

---

[2]The policy provided:

> 2. REPORTING A CLAIM—INSURED'S DUTIES
>
> a. The following provision is added to item 5:
>
> The person making the claim also shall answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers.

[3]The policy provided for arbitration of disputes that arose between State Farm and its insured with regard to uninsured motorist benefits. Arbitration was permitted, at the request of either party, where the parties could not agree if the insured was legally entitled to collect damages from the owner or driver of an uninsured motor vehicle, and, if so, the amount of the damage. No such arbitration provision was contained in the no-fault benefits section of the policy.

material condition of the policy and thus could not enforce his right under the policy to arbitration of his claim for these benefits. Moreover, State Farm argued that if plaintiff received an award from the arbitration panel, State Farm did not have to pay it because the condition precedent to any payment—the EUO—had not been met. Despite defendant's refusal to participate, the arbitration proceeded with the arbitrators finding that plaintiff had not breached the policy by refusing to submit to the EUO, that the other driver was not only at fault, but also uninsured, and that defendant accordingly should compensate plaintiff for uninsured motorist damages in the amount of $150,000.

Plaintiff filed suit, seeking in the first count of the complaint to enforce the arbitration decision regarding the uninsured motorist benefits, and seeking in the second count of the complaint an award of no-fault PIP benefits under the policy. Defendant moved for summary disposition arguing that plaintiff's failure to submit to the EUO was a breach of a condition precedent to his right to obtain either arbitration of his uninsured motorist claim or payment of no-fault PIP benefits. The trial court granted defendant's motion with respect to the uninsured motorist claim and vacated the arbitration award concerning that claim. The trial judge also ordered plaintiff to comply with the EUO provision regarding both the uninsured motorist benefits claim and the no-fault PIP benefits claim.

4

Declining to proceed in the fashion the trial court had established for perfecting his claims, plaintiff refused to submit to the EUO.  Because of this, defendant sought, and secured from the trial court, a summary disposition order dismissing plaintiff's case.

On appeal, the Court of Appeals reversed the trial court in part and affirmed in part.[4]  It concluded that summary disposition was not proper with regard to plaintiff's claim for no-fault PIP benefits because the no-fault act "sets forth the insured's duties of cooperation, and because it does not provide for an EUO provision, the provision is contrary to the no-fault act." *Id.* at 164.  The Court further concluded that the trial court did not err in granting summary disposition to State Farm on plaintiff's uninsured motorist benefits claim. The reason was that uninsured motorist benefits were not a statutorily mandated coverage, and thus an EUO and the rules concerning its use were matters the parties could agree to by contract.  As a result, the EUO could be enforced by having it stand as a condition precedent to the insurer's duty to pay uninsured motorist benefits.[5]  *Id*. at 167-169.

Leave to appeal was granted by this Court to determine

---

[4]241 Mich App 159; 614 NW2d 698 (2000).

[5]Plaintiff has not cross-appealed the decision of the Court of Appeals regarding uninsured motorist benefits. Therefore, plaintiff's failure to submit to the EUO precluded him from invoking the arbitration provision related to the uninsured motorist benefits section of the policy or from enforcing the arbitration award.

whether, by enacting the no-fault act, the Legislature's silence regarding what the parties could agree to with regard to claim discovery should be held to have precluded all methods not mentioned, including EUOs.[6] Further, if EUOs were not precluded, could the policy provision that conditioned payment of benefits on submission to an EUO take priority over the no-fault statute's requirement that the insurer pay benefits within thirty days after receipt of proof of the fact and of the amount of loss sustained?

## II

This case presents issues regarding statutory interpretation of the Michigan no-fault insurance act. Statutory interpretation is an issue of law that is reviewed de novo. *Cardinal Mooney High Sch v Michigan High Sch Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991); *Farm Bureau Mut Ins Co v Nikkel,* 460 Mich 558, 563-564; 596 NW2d 915 (1999). The primary rule of statutory construction is that, where the statutory language is clear and unambiguous, the statute must be applied as written. *Putkamer v Transamerica Ins Corp,* 454 Mich 626, 631; 563 NW2d 683 (1997). Similarly, where contract language is neither ambiguous, nor contrary to the no-fault statute, the will of the parties, as reflected in their agreement, is to be carried out, and thus the contract is enforced as written. *Farm Bureau, supra* at 566-567.

---

[6]464 Mich 873 (2001).

As mentioned above, the no-fault act contains no reference either allowing or prohibiting examinations under oath. In order to resolve this appeal, we must first determine whether, given this silence, the inclusion of examination under oath provisions in no-fault automobile insurance policies is allowed. Further, if EUOs *are* permissible in automobile no-fault policies, we must determine if there are any limits regarding when an insurer can refuse to pay benefits by invoking the insured's failure to comply with an insurer's request to submit to an EUO. That is, can the parties contract out of the statutory duty imposed on the insurer to pay benefits within thirty days of receipt of the fact and of the amount of the loss sustained by agreeing that no benefits are due until an EUO is given by the insured?

It is by now well understood that the Michigan no-fault insurance act is a comprehensive legislative enactment designed to regulate the insurance of motor vehicles in this state and the payment of benefits resulting from accidents involving those motor vehicles. As we explained in *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978):

> The Michigan No-Fault Insurance Act, which became law on October 1, 1973, was offered as an innovative social and legal response to the long delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system. The goal of the no-fault insurance system was to provide victims of motor vehicle accidents with assured, adequate, and prompt reparation for certain economic losses. The Legislature believed this goal could be most

effectively achieved through a system of *compulsory* insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a vehicle legally in this state. Under this system, victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for their common-law remedy in tort.

The Legislature realized that, with every motorist required to have this insurance, there were many types of injuries and property damage that such insurance would have to cover. These included, for example, medical, hospital, and death benefits[7], work loss[8], dependent benefits[9], and property losses[10]. To establish the methods for payment of these benefits, the Legislature, in MCL 500.3141, provided that the insurer "may require written notice to be given as soon as practicable after an accident involving a motor vehicle . . . ." Further, § 3142(1) provided that "[p]ersonal protection insurance benefits are payable as loss accrues," and, of particular significance to this case, § 3142(2) provided that payment is overdue "if not paid within 30 days after an insurer receives *reasonable proof of the fact and of the amount of loss sustained.*" (Emphasis supplied.) Incentives to promptly pay were provided by § 3142(3), which said that overdue payments bear simple interest at a rate of

---

[7]MCL 500.3105 and 500.3107(1)(a).

[8]MCL 500.3107(1)(b).

[9]MCL 500.3108(1) and 500.3112.

[10]MCL 500.3121.

twelve percent a year.

Thus, even though reasonable proof of loss to cause the payment of different benefits would require varying information depending on the benefit sought, once there was "reasonable proof of the fact and of the amount of loss sustained," the statute was clear that the benefit must be paid in a prompt manner or the insurer was subject to the interest penalty because payment was overdue.

Insurers, aware of this requirement of prompt payment, but also aware of their fiduciary duty to others in the insurance pool to not dissipate the pool's insurance fund reserves by paying unwarranted benefits, developed systems for processing these matters that included, as in this case, a contractual right to demand an EUO.

Examination under oath provisions, which require the insured to answer questions about the accident and damages claimed, existed in many types of insurance policies long before the advent of no-fault automobile insurance. See *Gordon v St Paul Fire & Marine Ins Co,* 197 Mich 226, 230; 163 NW 956 (1917). Their purpose, in part, was to enable insurers to gather facts so as to discover and eliminate fraudulent insurance claims. *Id.* The general difficulty of determining when a claim was not valid has been described in scholarly writings in the insurance field as being of "staggering

proportions."[11]  Given this problem, and the potential ability

of EUOs and other discovery vehicles to address it, EUOs in

policies have been viewed favorably by courts.  *Gordon, supra*

at 230; *Knop v Nat'l Fire Ins Co,* 107 Mich 323, 327-328; 65 NW

228 (1895); *Claflin v Commonwealth Ins Co,* 110 US 81, 94-95;

3 S Ct 507; 28 L Ed 76 (1884).[12]  Furthermore, as beneficial

as EUOs and similar discovery vehicles have been when employed

in policies that may be purchased at the insured's discretion,

their potential value is even greater when the coverage is, as

in this case, mandated by law.  *Tevo v Havlik,* 418 Mich 350,

366-367; 343 NW2d 181 (1984).[13]

The Court of Appeals, however, while recognizing the

utility of EUOs in general, found that EUOs were precluded in

the automobile no-fault insurance context because they were

not mentioned in the act.  In our judgment, the Court was in

error.  EUOs, or other discovery methods that the parties have

contracted to use, are only precluded when they clash with the

---

[11]Cf. Comment, Property insurance: A call for increased use of examinations under oath for the detection and deterrence of fraudulent insurance claims, 97 Dickinson L R 329 (1993).

[12]The Court of Appeals itself recognized this when it discussed the validity of the EUO in this case in the context of nonstatutorily required uninsured motorist insurance. *Cruz, supra* at 168-169.

[13]Concern about the affordability of no-fault insurance has caused the Legislature over the years to amend the no-fault act in order to reduce the scope of mandatory coverages. See, e.g., MCL 500.2101 *et seq.*  The goal was to make such insurance more affordable.  *State Farm Fire & Casualty Co v Old Republic Ins Co,* 466 Mich 142, 150, n 6; 644 NW2d 715 (2002).

rules the Legislature has established for such mandatory insurance policies. However, when used to facilitate the goals of the act and when they are harmonious with the Legislature's no-fault insurance regime, EUOs in the no-fault context should be viewed no differently than in other types of policies. In light of this reasoning, we conclude that an EUO that contravenes the requirements of the no-fault act by imposing some greater obligation upon one or another of the parties is, to that extent, invalid. Thus, a no-fault policy that would allow the insurer to avoid its obligation to make prompt payment upon the mere failure to comply with an EUO would run afoul of the statute and accordingly be invalid. However, an EUO provision designed only to ensure that the insurer is provided with information relating to proof of the fact and of the amount of the loss sustained—i.e., the statutorily required information on the part of the insured—would not run afoul of the statute.[14]

---

[14]The dissent asserts that the discovery devices specifically enumerated in the statute constitute the complete panoply of discovery tools that the Legislature intended to provide in connection with mandatory no-fault insurance coverage. How the dissent intuits this, for it must be intuition since the statute nowhere imposes such limitations on the contracting parties, is unclear. Militating against the dissent's intuition is the fact that the discovery methods provided by the act are quite limited. Thus, should the dissent's view be adopted, not only with regard to EUOs, but with regard generally to discovery, insurance carriers would lack important tools with which to root out fraud, as well as the means to responsibly investigate claims. There is no evidence that such a goal was within the contemplation of the Legislature in enacting mandatory no-fault insurance coverage.

The discovery tools provided in the statute are not

Our approach is premised on the doctrine that contracting parties are assumed to want their contract to be valid and enforceable. Accordingly, we are obligated to construe contracts that are potentially in conflict with a statute, and thus void as against public policy, where reasonably possible, to harmonize them with the statute. It was this approach that we utilized in our recent decision in *Universal Underwriters Ins Co v Kneeland,* 464 Mich 491, 498; 628 NW2d 491 (2001), in which we emphasized that, in interpreting contracts, we presume that the parties "intended to enter a valid, enforceable agreement . . . ." We further observed that we give force to this presumption by preferring constructions of contracts "that render[] them legal and enforceable." *Id.* Thus, in this case, as we did in *Universal Underwriters*, we construe this contract in a manner that renders it compatible with the existing public policy as reflected in the no-fault act.[15]

---

comprehensive. We simply cannot agree with the dissent that the provision of *some* discovery tools by the act—tools that address limited aspects of the insurer's postclaim information needs—precludes the parties from contracting for the use of other discovery tools including those such as EUOs that enable insurers to directly gather information from the insured. We see no basis for drawing such an implication from the language of the act, and the dissent offers no such basis.

[15]Presumably, it was this approach to harmonizing agreed-upon contract terms with statutory requirements when reasonably possible that caused the Commissioner of Insurance, pursuant to his duties under MCL 500.2236(1), to approve this policy with its EUO provision. The commissioner has the duty to determine that all the statutory requirements of the no-fault act are complied with in insurance policies under MCL 500.2236(1), which forbids the issuance of any insurance

12

Finally, to apply these rules to this case, State Farm

and its insured could not contract to vitiate State Farm's

---

policy or indorsement "until a copy of the form is filed with the insurance bureau and approved by the commissioner *as conforming with the requirements of this act and not inconsistent with the law."* (Emphasis supplied.)

Moreover, we are reinforced in our approach to this issue by the holdings in other jurisdictions with similar statutes.

The Hawaii Supreme Court, for example, dealing with a similar statutory provision that was silent regarding EUOs, but that provided that "[p]ayment of no-fault benefits shall be made within thirty days after the insurer has received reasonable proof of the fact and amount of benefits accrued, and demand for payment thereof [Hawaii Rev Stat 431:10C-304(3)(A)]" held that an EUO provision in a no-fault automobile insurance policy was permissible. *Barabin v AIG Hawaii Ins Co, Inc,* 82 Hawaii 258, 264; 921 P2d 732 (1996).

In New Jersey, in interpreting an analogous statute ("Personal injury protection coverage benefits shall be overdue if not paid within 60 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same," NJ Stat Ann 39:6A-5[g]) that was also silent on EUOs, the appellate court reached results similar to that of Hawaii, i.e., that the EUOs were allowed. *New Jersey Automobile Full Ins Underwriting Ass'n v Jallah,* 256 NJ Super 134; 606 A2d 839 (1992).

To the same effect, although involving an insurance policy provision requiring a no-fault policy holder to submit to an independent medical examination rather than an EUO, the Georgia Court of Appeals in *Morris v Aetna Life Ins Co,* 160 Ga App 484, 485; 287 SE2d 388 (1981), used reasoning in upholding the provision that is equally applicable to this case:

> It hardly can be argued that an insurer cannot investigate what reasonably appears to be a questionable claim simply because the underlying statute authorizing coverage does not mention such investigative rights. . . . [The insurer's] right to investigate the claim was reasonable and as such did not constitute a limitation by an insured to collect a valid claim under PIP protection; neither was it a violation of public policy or of the Georgia No-Fault Act. [Citation omitted.]

13

duty to pay benefits in a timely fashion as required by the statute. Once "reasonable proof of the fact and of the amount of loss sustained" was received by State Farm, it had to pay benefits or be subject to the penalties. Because it is acknowledged that such proof was received, State Farm's duty to pay benefits to its insured began thirty days thereafter. To the degree that the contract is in conflict with the statute, it is contrary to public policy and, therefore, invalid.

Accordingly, on the facts here presented, defendant's attempt to require plaintiff to submit to an EUO as a condition precedent to payment of no-fault PIP benefits was impermissible and, on remand, defendant must pay the PIP no-fault benefits—as determined by the trial court—including arrearages and statutorily allowed penalties. MCL 500.3142(3).

The dissent characterizes our interpretation of the no-fault act as one that "tilts the scale" in favor of the insurer. More accurately, however, this decision affords insurers access to one potentially valuable tool to prevent fraud.[16] Further, it does so only under circumstances that are

---

[16]EUOs are well suited to this task because, as the dissent concedes: "The primary use of an EUO is to detect fraud." Slip op at 3. Moreover, the dissent's assertion that EUOs are somehow not allowed because MCL 500.3159 allows court-ordered discovery concerning earnings and treatment is off target. Rather, EUOs are merely a prelitigation, complementary process to that allowed by § 3159 during litigation.

consistent with the requirements of the no-fault statute. To characterize this as any kind of "tilting" is to misunderstand the importance of eliminating fraud, not just to insurers, but also to those other insureds who pay higher insurance premiums when fraud goes undetected. In light of these considerations, we do not share the dissent's solicitude for those who refuse to provide insurers the information necessary to process no-fault insurance claims knowledgeably and fairly.

Next, the dissent, hurling the claim that this insurance policy is unconscionable, asserts that this opinion raises the quantum of proof necessary to establish a no-fault claim, provides a means for insurers to exploit the reasonable proof of loss standard, nullifies the effect of the penalty provision in § 3142(2), and enables insurers to avoid the statutory mandates by claiming an insured who has refused to submit to an EUO has not supplied reasonable proof. This policy is not unconscionable, eloquent proof of which comes from the failure of plaintiff to even make such a claim. Nor does this opinion provide insurers with the opportunity to ride roughshod over their insureds' rights under the no-fault act. Indeed, the majority, and the concurrence of Justice Weaver, have gone to great pains to make that clear.

The charges leveled by the dissent to the effect that this ruling will (1) facilitate insurers avoiding their obligations to pay benefits, (2) circumvent the act's penalty provision for slow payment, and (3) undermine the purpose of

15

the act, are irresponsible. We have unequivocally declared that EUOs may not be used to avoid the prompt payment requirement or to avoid penalties, and have specifically rejected defendant's attempt to use their EUO in such a manner. The dissent's cavalier distortion of our opinion, when our holding is as clear as it is, is dismaying.

IV

We affirm, on different reasoning, the Court of Appeals decision reversing summary disposition in favor of defendant on plaintiff's count seeking no-fault PIP benefits and remand to the trial court for further proceedings consistent with this opinion.

CORRIGAN, C.J., and YOUNG and MARKMAN, JJ., concurred with TAYLOR, J.

16

**S T A T E   O F   M I C H I G A N**

SUPREME COURT

PETER CRUZ, JR.,

    Plaintiff-Appellee,

v                                                            No.  117505

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant-Appellant.

_____

WEAVER, J. (*concurring*).

I agree with the majority's conclusion that EUO provisions may be included in no-fault policies, but are only enforceable to the extent that they do not conflict with the statutory requirements of the no-fault act, and that in the present case, the insurer impermissibly sought to enforce the provisions as a condition precedent to the insurer's duty to pay no-fault benefits.

I write separately to emphasize that this Court's holding should not be construed as one that would permit insurers to avoid their duty to pay no-fault benefits by merely claiming in every case that an insured who refused an examination under oath has failed to supply reasonable proof.

S T A T E   O F   M I C H I G A N

SUPREME COURT


PETER CRUZ, JR.,

    Plaintiff-Appellee,

v                                                              No. 117505

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendant-Appellant.
_____

KELLY, J. (*concurring in part and dissenting in part*).

    I agree with the majority's holding that defendant cannot make payment of personal injury protection (PIP) insurance benefits contingent on plaintiff submitting to an examination under oath (EUO). However, I respectfully disagree with its conclusion that an EUO provision that complied with the requirements of the no-fault act[1] would be permissible.

    No example has been suggested of an EUO that would not conflict with the goals and purposes of the act. Therefore, I conclude that an EUO provision could not comply with the

_____
    [1]MCL 500.3101 *et seq.*

requirements of the no-fault act.  I would affirm the Court of Appeals decision that all EUO provisions are unenforceable under the act.

## I.  Applicable Standards of Review

This case involves questions of law and issues of statutory interpretation.  They are reviewed de novo, the primary rule of statutory construction being to effectuate the intent of the Legislature.  Where the statutory language is clear and unambiguous, it is generally applied as written. *Putkamer v Transamerica Ins Corp,* 454 Mich 626, 631; 563 NW2d 683 (1997).  Also, because the no-fault act is remedial in nature, it must be liberally construed in favor of the persons intended to benefit from it.  *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 28; 528 NW2d 681 (1995).

## II.  Current Uses of EUO Provisions

The parties agree that the no-fault act makes no reference to EUO provisions.  One of the questions before us is whether this absence indicates a legislative intent not to allow EUOs in the context of no-fault insurance policies.  In deciding this, it is important to consider the nature and purpose of EUOs.

Examination under oath provisions have been held generally enforceable in fire insurance and homeowner's insurance policies.  See, e.g., *Yeo v State Farm Ins Co*, 219

Mich App 254; 555 NW2d 893 (1996); *Dellar v Frankenmuth Mut Ins Co*, 173 Mich App 138; 433 NW2d 380 (1988). Their purpose is to enable an insurer to gather facts in determining whether to deny or to honor a claim. *Gordon v St Paul Fire & Marine Ins Co*, 197 Mich 226, 230; 163 NW 956 (1917).

The EUO questioning takes place before a lawsuit is initiated. Comment, *Property insurance: A call for increased use of examinations under oath for the detection and deterrence of fraudulent insurance claims*, 97 Dickinson L R 329, 334 (1993). An insurer may use it to discourage litigation or to promote settlement. *Id.* It can be used to obtain information on any matter concerning the insurance policy and the loss. Questions asked during an EUO are not deemed improper merely because they are controversial or evoke answers that might be used for impeachment. *Id.* at 338. The primary use of an EUO is to detect fraud.

The insured's compliance with an EUO provision contained in a property insurance policy is generally considered a condition precedent to recovery.[2] *Id.* 339. Thus, refusal to submit to an EUO constitutes a breach of the insurance contract and precludes the payment of benefits, unless the refusal is for cause. *Gordon, supra.*

---

[2]A "condition precedent" is a fact or event that must take place before there is a right to performance. *Knox v Knox*, 337 Mich 109, 118; 59 NW2d 108 (1953).

3

III.  The Inapplicability of EUOs in No-Fault Insurance

Automobile no-fault insurance is distinguishable from property insurance in which EUOs have been found acceptable. First, motor vehicle owners in Michigan are mandated by statute to purchase no-fault insurance. The no-fault act is an expression of legislative intent to provide automobile accident victims with assured, adequate, and prompt reparation. *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84, 89; 549 NW2d 834 (1996). To that end, the act mandates that every owner or registrant of a motor vehicle purchase personal injury protection insurance as long as the vehicle is driven. MCL 500.3101(1).

When accidental bodily injury results from the use of a vehicle, an insurer is liable to pay benefits under this insurance without regard to fault. MCL 500.3105(1). The act provides that PIP benefits are payable for reasonable charges incurred in the care, recovery, or rehabilitation of the injured person. MCL 500.3107(1)(a). Benefits are also payable for loss of income for the first three years following the date of an accident. MCL 500.3107(1)(b).

Of course, the insurer's liability is not without limit. The act expressly addresses the duties of the insured. It provides numerous means by which insurers may gather information about the fact and the amount of a claimed loss.

4

A claimant has the burden of establishing the reasonableness and necessity of medical expenses and the amount that would have been earned had the injury not occurred. See *Nasser v Auto Club Ins Ass'n*, 435 Mich 33; 457 NW2d 637 (1990); *Anton v State Farm Mut Auto Ins Co*, 238 Mich App 673, 684; 607 NW2d 123 (1999). The no-fault act also mandates that a claimant submit to a mental or physical examination when his mental or physical condition is material to a claim. MCL 500.3151. It requires a treating physician or medical institution to submit a written report of the history, condition, treatment, and dates and costs of treatment of the injured person. MCL 500.3158(2).

With regard to proof of loss of income, MCL 500.3158(1) mandates that the employer of a claimant furnish a sworn statement of the claimant's earnings. The insurer can seek a discovery order under MCL 500.3159 when there is a dispute regarding its right to discover facts concerning earnings or the claimant's "history, condition, treatment and dates and costs of treatment."

The act is considered the "rule book" for deciding issues regarding the payment of PIP benefits. *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993). Despite the fact that it provides numerous and specific means to obtain information about a claim, it is silent regarding

5

the validity of EUO provisions.  It is difficult to conclude from that silence a legislative intent to allow EUO provisions.

Even more significant is the language used in MCL 500.3142(2):

> Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives *reasonable proof* of the fact and of the amount of loss sustained.  If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer.  Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer.  [Emphasis added.]

This section is intended to penalize insurers that refuse to comply with the act's goal of providing prompt reparation. *Wood v Detroit Automobile Inter-Ins Exch*, 413 Mich 573, 589, n 17; 321 NW2d 653 (1982).

Penalty interest begins to accrue when an insurer refuses to pay benefits for which it is liable.  MCL 500.3142(3).  It is assessed regardless of the insurer's good faith in withholding benefits. *Davis v Citizens Ins Co of America*, 195 Mich App 323, 328; 489 NW2d 214 (1992).  Thus, an insurer can refuse to pay benefits with impunity only if the insured fails to file a timely claim and provide reasonable proof of loss. *Johnston v Detroit Automobile Inter-Ins Exch*, 124 Mich App 212, 216; 333 NW2d 517 (1983).  Of course, the insurer could

6

escape the penalty clause if it correctly deemed the proof of loss unreasonable, as in cases of fraud.

It is not apparent, nor does defendant argue, that an EUO is needed in no-fault policies for gathering information. Nor is an EUO essential to enable the insurer to detect fraud. The statute provides express and ample means of gathering the information needed to detect fraud and establish entitlement to benefits. Hence, I conclude that the absence of a statutory provision for EUOs indicates a legislative intent not to allow their use.

IV.   The Flaws in the Majority's Analysis

The majority concludes, notwithstanding the act's detailed scheme for gathering information, that the Legislature provided inadequate means for insurers to detect fraud. It assumes that EUO provisions are needed but were overlooked. However, it seems to me likely that the Legislature considered the importance of an insurer's need to detect fraudulent claims when it wrote and passed the no-fault act.[3]

---

[3]MCL 500.3159 of the no-fault act provides:

> In a dispute regarding an insurer's right to discovery of facts about an injured person's earnings or about his history, condition, treatment and dates and costs of treatment, a court may enter an order for discovery. . . .

(continued...)

The majority's assumption tilts the scale in favor of the insurer. It allows the insurer to add to the contract a provision that raises the quantum of proof necessary to establish a no-fault claim. Not only must the insured provide reasonable proof of loss, it must comply with an EUO, if requested. The insured might provide reasonable proof of loss but refuse an EUO. The refusal, alone, would justify an insurer in refusing to pay claims, protect it from the act's penalty provision, and shield it from suit by the insured for breach of contract.

The majority's opinion sets the stage for this insurance abuse. The insurer has only to assert that the claimant's proof of loss is not reasonable, invoke its EUO clause, and wait to see if the insured refuses to comply. This interpretation of the no-fault act is unconscionable. It flies in the face of the act's purpose: to provide prompt reparation to insureds. The act requires payment of premiums for mandated coverage. The majority permits the insurer to disallow the insured's claims using a nonstatutory provision unnecessary to establish reasonable proof of a claim. See

---

[3](...continued)
If the Legislature intended the use of EUOs in no-fault automobile insurance policy sections, there would have been no need to write into the act this specific provision for discovery. This is because discovery includes depositions which are examinations under oath supervised by the court.

8

*Blakeslee v Farm Bureau Mut Ins Co of Mich*, 388 Mich 464, 474; 201 NW2d 786 (1972). We should not leave open the door for EUOs in no-fault policy provisions in reliance on speculation that circumstances might arise where they would comply with the statutory requirements of the act.

## V. Conclusion

The no-fault act does not permit an insurer to disallow claims by using an EUO, a procedural requirement that has not been shown as necessary to uncover fraud or the fact or amount of a no-fault loss. In fact, the Legislature ignored EUO provisions when it wrote the no-fault act. An insurer's addition of one to a policy allows it to avoid payment of valid no-fault claims, circumvent the act's penalty provision, and defeat suits for contract breach.

Presumably, in this case, if defendant had not admitted that plaintiff provided adequate information for it to honor the claim without an EUO, the majority would have ruled for defendant. The majority has failed utterly to explain why its ruling will not permit insurers to avoid paying no fault benefits merely by claiming that an insured who refused an EUO failed to supply reasonable proof. By leaving open this door, the majority undermines the act's purpose of providing prompt reparation to victims of automobile accidents.

For all these reasons, I would affirm the Court of

9

Appeals determination that EUOs in no-fault automobile insurance policies are unenforceable.

CAVANAGH, J., concurred with KELLY, J.