# STATE OF MICHIGAN

# COURT OF APPEALS

ELIZABETH MARKEL, ANN MARIE ROGERS, and ROGER SCHMIDT,

        Plaintiffs-Appellants,

v

DAVID MACKLEY, COLLEEN BARKHAM, ALICE TOMBOULIAN, and JOSEPH PERUZZI,

        Defendants-Appellees.

UNPUBLISHED
November 1, 2016

No. 327617
Oakland Circuit Court
LC No. 2014-139227-CZ

Before: FORT HOOD, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Plaintiffs appeal as of right an order granting summary disposition in favor of defendants David Mackley, Colleen Barkham, Alice Tomboulian, and Joseph Peruzzi pursuant to MCR 2.116(C)(10). On appeal, plaintiffs argue that the trial court erred in granting summary disposition in this action alleging violations of the Open Meetings Act (OMA), MCL 15.261 *et seq*. We affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

The issues presented in this case involve the activities of the Oakland Township Parks and Recreation Commission (PRC). The PRC is made of seven elected officials, each elected to a four-year term. In November 2012, plaintiffs Roger Schmidt and Ann Marie Rogers were newly elected as commissioners to the PRC.[1] They were joined by Andrew Zale, who was also elected for the first time in November 2012. Defendants, the remaining four members of the PRC, were all long-time commissioners. At the heart of this matter is a divide between defendants and the newer PRC members. Specifically at issue on appeal are emails sent between defendants regarding certain PRC matters that plaintiffs allege violated the OMA. Essentially, plaintiffs alleged that defendants used email communications to discuss and decide how to address PRC matters, and would then carry out those decisions at the public PRC meetings as a united front.

---

[1] Plaintiff Elizabeth Markel is a resident of Oakland Township, and frequently attended public meetings of the PRC.

-1-

Plaintiffs argue that the trial court erred in granting summary disposition pursuant to MCR 2.116(C)(10). We agree. Further, we conclude that plaintiffs were entitled to summary disposition.

"This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law." *Alcona Co v Wolverine Environmental Prod, Inc*, 233 Mich App 238, 245; 590 NW2d 586 (1998). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). To the extent this Court is asked to interpret the OMA, "[s]tatutory interpretation is an issue of law that is reviewed de novo." *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002).

The purpose of the OMA was to "promote a new era in governmental accountability." *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 222; 507 NW2d 422 (1993). "To further the OMA's legislative purposes, the Court of Appeals has historically interpreted the statute broadly, while strictly construing its exemptions and imposing on public bodies the burden of proving that an exemption exists." *Id*. at 223. "The Open Meetings Act allows individuals to bring civil actions for injunctive relief to either compel compliance or enjoin further noncompliance." *Davis v Detroit Fin Review Team*, 296 Mich App 568, 576-577; 821 NW2d 896 (2012).

Pursuant to the OMA, "[a]ll meetings of a public body shall be open to the public and shall be held in a place available to the general public." MCL 15.263(1). Further, "[a]ll deliberations of a public body constituting a quorum of its members shall take place at a meeting open to the public except as provided in this section and sections 7 and 8." MCL 15.263(3).[2] In other words, "[u]nder the OMA, public bodies must conduct their meetings, make all of their decisions, and conduct their deliberations (when a quorum is present) at meetings open to the public." *Speicher v Columbia Twp Bd of Trustees*, 497 Mich 125, 134-135; 860 NW2d 51 (2014).

The OMA defines a "meeting" as "the convening of a public body at which a quorum is present for the purpose of deliberating toward or rendering a decision on a public policy[.]" MCL 15.262(b). In the present case, it is undisputed that the PRC is a "public body" pursuant to the definition provided by the OMA at MCL 15.262(a). Therefore, "[t]o constitute a 'meeting' of a 'public body,' as contemplated by the OMA, the following elements must be present: (1) a quorum, (2) deliberation or rendering of a decision, (3) on a matter of public policy." *Ryant v Cleveland Twp*, 239 Mich App 430, 434; 608 NW2d 101 (2000). The OMA defines a "decision"

---

[2] It is undisputed that, in the present case, the mentioned exceptions are inapplicable. See MCL 15.267; see also MCL 15.268; see also MCL 15.263(7)-(8).

as "a determination, action, vote, or disposition upon a motion, proposal, recommendation, resolution, order, ordinance, bill, or measure on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy." MCL 15.262(d). The OMA does not, however, define what it meant when it referred to the term "deliberating." See *Ryant*, 239 Mich App at 434. This Court in *Ryant*, therefore, consulted dictionary definitions and provided the following attempt to define "deliberating":

> The Legislature failed to define the term "deliberating" in the context of the OMA. Black's Law Dictionary (7th ed), defines this word as "the act of *carefully considering* issues and options before making a decision or taking some action; esp., the process by which a jury reaches a verdict; as by analyzing, *discussing*, and weighing the evidence" (emphasis added [in *Ryant*]). The word "discussion" is defined as the act of *exchanging views* on something; a *debate*. *Id.* (emphasis added [in *Ryant*]). Although Black's Law Dictionary does not define "debate," the *Random House Webster's Unabridged Dictionary* (*2d ed*) (1998), defines the word as "a discussion, as of a public question in an assembly, involving opposing viewpoints." [*Ryant*, 239 Mich App at 434.]

When the *Ryant* Court considered the question of whether a deliberation or decision occurred in the context of the case, it asked whether there was an exchange of affirmative or opposing views, a debate on the presented issue, or a discussion regarding that issue. See *id*. at 435-436.

Before the trial court and on appeal, plaintiffs argue that the emails exchanged between defendants amounted to a violation of the OMA, in that those emails were a meeting where a four-member quorum deliberated and decided issues of public policy. Defendants, on the contrary, insist that no set of emails fulfilled the three requirements of the OMA. The trial court held that while defendants deliberated regarding issues of public policy, no quorum was present.

We first address the requirement that a "quorum is present." It is undisputed that, as a seven-member public body, a quorum of the PRC consists of a minimum of four members.[3] The trial court held that there was not a quorum present in the emails. The trial court stated: "[T]his Court finds that plaintiffs acknowledged in their depositions that none of the emails constituted a 'quorum' since only three defendants were in any given email." On appeal, defendants again assert this position, highlighting emails in the record where less than four commissioners were included. Defendants also point to deposition testimony where plaintiffs, questioned regarding whether individual emails constituted a meeting, admitted that certain emails did not contain a quorum, and, thus, were not meetings. The trial court relied heavily on this testimony.[4]

---

[3] Mindy Milos-Dale, the director of the parks and recreation department, was often included on the disputed emails. However, Milos-Dale was not an elected commissioner and therefore would not count toward a four-member quorum.

[4] We note that we are not convinced that a deponent's opinion that an email did or did not contain a quorum should be determinative here, particularly where documentary evidence was available.

However, our review of the record reveals that while plaintiffs may have admitted that some of the emails only contained three commissioners, there were other emails that included four commissioners.[5] Accordingly, we reject this reasoning.

Related to the requirements of a quorum as well as deliberation toward a decision is the argument advanced by defendants that where a quorum was included in the emails but all four commissioners did not necessarily engage in the discussion, a meeting did not occur. Ultimately, we disagree with defendants' argument in that regard.

To begin, it is plain that, even where a quorum of individuals are present at a given nonpublic meeting, that does not necessarily mean that there is a violation of the OMA. Specifically, in *Ryant*, 239 Mich App at 435-436, this Court considered a case where a quorum of a township board attended a planning commission meeting. That quorum, however, was made up of members that were also members of the planning commission. *Id*. at 431. In other words, there were individuals that were members of both the township board and the planning commission. *Id*. While at that meeting, a township board member that was not a member of the planning commission addressed the planning commission. *Id*. at 432. "The trial court held that because [the township board member] addressed the planning commission in the presence of a quorum of the township board, the board was engaged in deliberations toward rendering a decision regarding a matter of public policy without proper notice and in violation of the OMA." *Id*. This Court considered the issue on appeal and reversed. *Id*. at 436. This Court reasoned that "[t]he record does not show that any of the other township board members present exchanged any affirmative or opposing views, debated the proposed amendment, or engaged in any discussion regarding the statements made by the township supervisor." *Id*. at 435-436. In other words, the members of the planning commission that were also members of the township board were not engaged in an exchange of ideas regarding the issue presented by the township board member. See *id*. This Court considered the other township board members as observers. *Id*. at 436. This Court reasoned that "[a]s long as the township board members did not engage in deliberations or render decisions, the subject meetings did not need to be noticed as meetings of the township board." *Id*. Stated differently, so long as the members were in attendance but remained silent, there was not a deliberation under the OMA. *Id*.

Defendants relied heavily on *Ryant* for the notion that all four quorum members had to participate in order to constitute deliberation by a quorum. However, we believe that defendants

---

[5] For instance, the emails involving discussions of the Land Preservation Act often contained four commissioners. Indeed, in their brief, defendants cite to several emails dated April 10, April 19, and May 10, 2013, that did not contain four commissioners. However, there were also emails in the record dated April 4, April 6, April 12, April 17, April 19, April 21, and June 26, 2013, which did include four commissioners. Defendants also cite to a May 21, 2013 email between Mackley and Peruzzi regarding the Marshview Connector Parking Lot. Defendants fail to reference that Mackley forwarded Peruzzi's email to all defendants that same day, prompting additional responses. Emails dated June 27 and July 2, 2013, on the same issue also contained the four defendants.

attempt to overextend the *Ryant* decision to this circumstance. *Ryant* is distinguishable from the present case. In *Ryant*, the non-deliberating township board members were also members of the planning commission. The Court's holding made clear that these dual members, who remained silent during the township board member's presentation, were acting in the capacity of the planning board, as opposed to the township board. In this case, the PRC members included in the emails at issue here may have not responded to all of the emails, but were not involved in a conflicting or dual role at the time. Thus, the circumstances between *Ryant* and the current case are distinct. Indeed, we are not convinced that the holding in *Ryant* should be as broadly construed as defendants suggest.

Additionally, defendants' interpretation runs contrary to the statutory language that only requires that a "quorum is present." MCL 15.262(b). The language of the statute does not state that the quorum is required to deliberate, but rather that the quorum be convened for "the purpose of deliberating." MCL 15.262(b). The "primary goal" of statutory interpretation "is to discern the intent of the Legislature by first examining the plain language of the statute." *Driver v Naini*, 490 Mich 239, 246–247; 802 NW2d 311 (2011). A statutory provision must be read in the context of the entire act, and "every word or phrase of a statute should be accorded its plain and ordinary meaning." *Krohn v Home–Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011). When the language is clear and unambiguous, "no further judicial construction is required or permitted, and the statute must be enforced as written." *In re Harper*, 302 Mich App 349, 355; 839 NW2d 44 (2013) (citation and internal quotation marks omitted). Based on these principles, if we were to read the statute in question as requiring the entire quorum to actively engage in the discussion, we would be reading a requirement into MCL 15.262(b) that it does not contain.

We acknowledge that there must be some level of balance, because as defendants argue, it would improper to be able to have an OMA violation foisted upon a quorum of individuals simply by including them all in an email. Therefore, pursuant to MCL 15.262(b) and *Ryant*, we agree there must be some level of discourse on the issue of public policy that is being presented. However, that level of discourse need not require the participation of every quorum member to fulfill the requirements of the OMA. MCL 15.262(b). See also *Ryant*, 239 Mich App at 435-436. Indeed, to impose such a requirement would allow public bodies to forego the requirements of the OMA by merely having certain members of the quorum read the emails but remain silent. This would run contrary to the purpose of the OMA, which is to increase governmental accountability. *Booth Newspapers*, 444 Mich at 222.

Ultimately, we conclude that whether "a quorum is present for the purpose of deliberating toward a decision," when only some commissioners in the email chain respond to a message is often a question of fact. With that said, here, we conclude that the evidence clearly showed a violation of the OMA by defendants. Speaking in general terms, there was no evidence that the commissioners on the email were mere observers like in *Ryant*. As discussed further below, even when a defendant did not affirmatively reply to an email, their tacit agreement was later demonstrated at the public meetings by acting consistently with decisions made in the emails. Further, none of the commissioners replied objecting to their inclusion on the emails. Additionally, there were many emails, so responding to some emails, but not others, could indicate participation on behalf of a commissioner. This is especially true where there was evidence that defendants intended to subvert the OMA, as noted by the trial court, and at least

one commissioner was advised against sending emails that included a quorum of the PRC actively deliberating. In addition to these general observations regarding the emails, we also address each of the five "meetings" alleged by plaintiffs to determine whether the emails presented to the trial court violated MCL 15.262(b).

First, we consider the alleged meeting with regard to the Oakland Township Board of Trustees's (BOT) attempt to seize control of the Land Preservation Fund (LPF) from the PRC. Again, the first requirement for a meeting under the OMA is that there be a quorum present. *Ryant*, 239 Mich App at 434. A review of the emails on this topic reveals that the issue was initially raised by an email from Mindy Milos-Dale[6] to defendants Barkham, Tomboulian, and Peruzzi. In two separate emails on April 1, 2013, Mindy indicated that they should prepare a response to BOT's attempt to take over the LPF, and offered that the four defendants participate in a conference call to determine their approach on the issue.

Later, the four defendants considered how to handle the legal opinion prepared by the attorney for the parks and recreation department, Steve Joppich. Mackley emailed the three defendants and Mindy, noting that plaintiffs Rogers and Schmidt likely provided copies of Joppich's legal opinion to Terry Gonser, the Oakland Township Manager. Mackley referred to Rogers and Schmidt as "spy's." Tomboulian offered that they should produce Joppich's legal opinion at the meeting and then ask that the PRC members return it for shredding. Peruzzi responded to the same parties noting that Rogers and Schmidt would not be likely to return the legal opinion, so they should be proactive and submit it to the BOT's attorney and the BOT. Mackley responded the next day to the same parties, and included a draft position statement. In that email, Mackley sought input on the draft position statement, based on the legal opinion provided by Joppich. Mackley also informed the other three defendants about how he would like to have the PRC meeting on the topic to play out. Mackley noted that the PRC would have to approve an official statement that was to be sent to the BOT, so he stated that he would raise the issue before the PRC by reading parts of his position statement. After doing so, Mackley stated that one other defendant should move to adopt the position statement as the statement of the PRC, and then he would second it. Mackley even noted that the vote would likely end up 4-3 or 5-2.

When the meeting considering the issue actually arose, the Meeting Minutes reflected that the events related to the legal and position statement occurred just as suggested by Mackley. He began by reading parts of his position statement, another defendant moved to adopt that statement, which was seconded by another defendant, and then the final vote was 4-3 in favor of adoption. Notably, the 4-3 vote went directly along the lines expected, the four defendants voting in favor and the remaining PRC members voting against.

It is undisputed that the four defendants received the aforementioned emails. The emails reveal that Mackley, Peruzzi, and Tomboulian actively discussed the legal opinion and proposed

---

[6] Recall that it is undisputed that Mindy is not a commissioner and therefore does not count toward the total for a quorum.

position statement, and the process that should be involved in adopting that statement. Barkham received those emails and then when the actual meeting took place, the issue played out exactly as described. From this, it is plain that the four defendants were present in the email chain while public policy issues—specifically the PRC's response to the BOT's attempt to seize control over the tax-funded LPF—were being deliberated upon. See *Ryant*, 239 Mich App at 435-436. They decided that there should be a legal opinion prepared by Joppich. Upon reading that opinion Mackley drafted a position statement, and the four members were present in the email chain when Mackley discussed how that should be passed at the next meeting. Then when the meeting occurred, everything went according to plan. Because there was a quorum present and deliberation occurred regarding a matter of public policy, there was a meeting pursuant to MCL 15.262(b). Further, because that meeting was held privately via email, the four defendants violated MCL 15.263(3), which required such deliberations to be open to the public. For this reason alone, we reverse the trial court's decision and remand for the trial court to enter an order granting summary disposition in favor of plaintiffs, considering that plaintiffs seek only to have declaratory relief, an injunction on further violations of the OMA, and fees and costs. Because no damages are involved, the finding of one violation makes no difference opposed to five violations. However, we consider the other alleged violations for thoroughness.

Next, plaintiffs allege that defendants had an email meeting in violation of the OMA regarding the control of personnel. The question was whether James Creech, the Oakland Township Supervisor, was the manager of the PRC's employees, or whether the PRC and Mindy controlled those employees. Once again, the four defendants were recipients of the emails discussing this issue. Therefore, a quorum was present. MCL 15.262(b). There was not, however, a deliberation toward a decision. Rather, there was merely a discussion among PRC members regarding who was in charge of the PRC employees. Indeed, the discussion focused mostly on resolutions that the PRC had made in the past regarding Creech's role as the Oakland Township Human Resources Manager and had little to do with future actions that revolved around public policy. MCL 15.262(b).

The specific discussion regarding a hiring of a stewardship manager, however, was different. The record reveals that there was no dispute that a majority vote of the PRC was required to hire a new PRC manager. However, prior to the meeting at which the hire was to take place, Mindy and the four defendants explicitly discussed the hiring of Ryan Colliton for the position. Mindy began by presenting the idea in an email to the four defendants. Tomboulian responded that they should offer the contract to Colliton, before the PRC meeting even took place, and to use parks funds if the LPF was not available. Mackley responded as well, noting that they should be prepared to offer the contract to Colliton, but to wait and see the outcome of a scheduled meeting with Gonser. When the issue was raised at the PRC meeting, Mindy proposed that the PRC hire Colliton. While there were some objections from Zale and Rogers, the motion to hire Colliton was made by one of the four defendants, seconded by another, and passed by all four (by a vote of 5-2, including Zale). Once again, it is plain that all four defendants received the emails and therefore a quorum was present pursuant to MCL 15.262(b). Next, it is also plain that Mackley and Tomboulian specifically engaged in deliberations regarding the hire of Colliton as the stewardship manager. Indeed, both of those defendants indicated that the contract should be prepared (and even offered) without considering that there still needed to be a resolution passed by the entire PRC. This reflects a consideration by

-7-

Mackley and Tomboulian that the other two defendants were on board and present in the email conversation even though they did not actively participate. The outcome of the meeting showed that this understanding was correct, when the four defendants all voted together to hire Colliton. Clearly, this was a discussion and exchange of ideas on what process the PRC should take in hiring a stewardship manager, and more specifically, exactly which candidate they should hire. MCL 15.262(b); *Ryant*, 239 Mich App at 235-236. As such, defendants were present as a quorum, while deliberating regarding a matter of public policy (the hiring of a stewardship manager). MCL 15.262(b). Considering this, the meeting should have been open to the public, and the failure to do so was a violation of MCL 15.263(3).

Next, plaintiffs argue that defendants also held an email meeting regarding the Marshview Connector Parking Lot (MVC). The issue was initially raised by Mackley, in an email to the entire PRC, wherein Mackley proposed adding the issue to the next PRC meeting as requested by Gonser. Quite plainly, the agenda of a PRC meeting would not be a matter of public policy. MCL 15.262(b). Peruzzi later responded to Mackley alone, however, noting that he did not think the addition of the MVC issue to the agenda was timely, and that they should therefore hold off on considering it. Mackley then forwarded Peruzzi's response to the other three defendants and asked for their response. In a later response by Tomboulian to Mindy and the other three defendants, however, she noted that she had met with representatives of the Trails and Pathways Fund, and that they had indicated they would pay for the MVC. She proposed that the PRC permit that funding and construction of the parking lot go ahead, even though it was to take place on parks land. At the subsequent meeting, the issue was raised by Tomboulian in the exact manner as discussed in her emails. She proposed that the Trails and Pathways Fund would pay for the MVC and that the PRC permit construction on its land. The matter passed unanimously. Once again, it is plain that the four defendants received the email in question, and that there was deliberation regarding whether to permit the MVC to be built on parks owned land with funding from the Trails and Pathways Fund. MCL 15.262(b). This bore out in the following meeting, when the discussion on the topic followed the exact format of the discussion in the email by Tomboulian. As such, these emails between defendants amount to a meeting under the OMA, and therefore violated the OMA when it was not held publicly. MCL 15.263(3).

Finally, plaintiffs complain of discussions relating to procedure guidelines at future PRC meetings. Here, summary disposition for defendants was proper. The emails at issue clearly reflect that Zale, Peruzzi, and Barkham were meeting as a subcommittee of the PRC to recommend changes to meeting procedure guidelines to the actual PRC. Because they were meeting as a subcommittee (via email and in person), there was no violation of the OMA because the subcommittee was not a "public body." MCL 15.262(a). This Court has held that a "public body does not usually initiate or make a recommendation to itself." *Davis*, 296 Mich App at 600. Rather, a public body might have subcommittees or committees that meet and then make recommendations to the public body as a whole. See *id*. When this occurs, there is no violation of the OMA. *Id*. The facts plainly reveal that the subcommittee was not acting as a public body but was simply preparing to make a recommendation to the PRC as a whole. Indeed, that exact situation occurred at the subsequent meeting, when they presented the items discussed at the subcommittee meeting, permitted discussion and public comment on those issues, and then voted on them with the added changes. This clearly falls under the exception

provided in *Davis*, wherein the subcommittee was not a public body. Therefore, there was no violation of the OMA, even though the meeting was held privately. MCL 15.263(3). Thus, summary disposition regarding to this issue was proper.[7]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien

---

[7] We also take this opportunity to address the alternative argument relating to the existence of constructive quorums. The trial court declined to find a "constructive forum," distinguishing case law relied on by plaintiffs where this Court has held that intentionally forming sub-quorum groups for the purpose of deliberating and making actual decisions violated the OMA. See *Booth Newspapers,* 444 Mich at 222. The court distinguished the facts here because there was no evidence that defendants were intending to form sub-quorums to subvert the OMA. Contrary to the court's finding, there was evidence in the record that the PRC's legal counsel advised against emailing a quorum of commissioners. Thus, had we not already decided in favor of plaintiffs, we would have concluded that a question of fact existed regarding the existence of constructive quorums.